[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2005
THOMAS K. KAHN
CLERK

No. 04-15912
Non-Argument Calendar

_____

D.C. Docket No. 03-00681-CV-A-N

ELISHA COOLEY,
WILLIE HACKETT, Jr., et al.

                                        Plaintiffs-Appellants,

     versus

GREAT SOUTHERN WOOD
PRESERVING,

                                        Defendant-Appellee,

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 18, 2005)

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants, Elisha Cooley, William Davis, Michael Stephens, Willie Hackett, Jr., and Clifford Edgar, all African-American men, appeal through counsel the district court's grant of summary judgment, pursuant to Fed.R.Civ.P. 56©), to their current or former employer, Great Southern Wood Preserving Co. ("Great Southern"), a trucking company, on their claims of disparate treatment based on race, filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981; and their Title VII claims of retaliation, filed pursuant to 42 U.S.C. § 2000e-3. The plaintiffs argue on appeal that the district court committed reversible error in (1) striking the plaintiffs' initial defective complaint; (2) finding waived or granting summary judgment on the plaintiffs' claims in their amended complaint; and (3) granting Great Southern's motions to strike discovery that either involved testimony from witnesses that were not disclosed previously, or was produced after the discovery deadline.[1] For the reasons set forth more fully below, we affirm.

**Issue 1:**      <u>**Order striking the plaintiffs' initial defective complaint**</u>

---

[1] The district court also concluded that (1) the plaintiffs claims that Great Southern assigned better paying loads to white drivers, in violation of its seniority policy were time-barred under 42 U.S.C. § 2000e-5(e)(1); and (2) the plaintiffs had abandoned by failing to address in their opposition to Great Southern's motion for summary judgment (i) Cooley's promotion claims, (ii) Hackett's retaliation claim based on his suspension, and (iii) the plaintiffs' general claim based on the terms and conditions of employment. However, because the plaintiffs have not challenged these determinations in their appeal brief, we deem arguments on them abandoned. <u>See</u> <u>Access Now, Inc. v. Southwest Airlines Co.</u>, 385 F.3d 1324, 1330 (11th Cir. 2004) (issues not argued in initial brief are deemed abandoned).

The plaintiffs generally argue that the court erred and "exhibit[ed] an impermissible hostility to their case" by <u>sua sponte</u> striking their original complaint. Citing to <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the plaintiffs contend that, in drafting their original complaint, the satisfied the notice pleading requirements of Fed.R.Civ.P. 8(a).

Under Fed.R.Civ.P. 8(a)(2), a plaintiff need only assert "a short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2). Moreover, as the plaintiffs assert, the Supreme Court in <u>Swierkiewicz</u> determined that a complaint asserting employment discrimination under Title VII need not contain specific facts establishing a <u>prima facie</u> case; it, instead, need only contain a short statement of the claim showing that the pleader is entitled to relief. <u>Swierkiewicz</u>, 534 U.S. at 510-11, 122 S.Ct. at 997. The Court explained that the burden-shifting analysis applicable to Title VII claims involving circumstantial evidence is an evidentiary standard rather than a pleading standard. <u>Id.</u> The Court also discussed that "[the] simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Id.</u> at 512, 122 S.Ct. at 998.

Nevertheless, we have concluded that the Supreme Court in <u>Swierkiewicz</u> "did not even remotely suggest that a pleading could survive dismissal when it

3

consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1270-71 (11th Cir. 2004). Indeed, "[p]leadings must be something more than an ingenious academic exercise in the conceivable," and "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under [Fed.R.Civ.P. 12(b)(6)]." Id. at 1271 (quotations omitted). As part of these minimum pleading requirements, discrete claims should be plead in separate counts. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (citing to Fed.R.Civ.P. 10(b)).

A plaintiff's failure to identify his claims with sufficient clarity to enable the defendant to frame a responsible pleading constitutes "shotgun pleading." Byrne v. Nezhat, 261 F.3d 1075, 1129-30 (11th Cir. 2001). "[I]f, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent authority, must intervene sua sponte and order a repleader." Id. at 1133.

Here, the plaintiffs in their original complaint generally asserted that Great Southern "routinely" treated its white drivers differently than its African-American drivers, and that Great Southern committed several retaliatory acts against its African-American drivers. However, as the district court concluded, other than

4

asserting that Great Southern "discriminated against plaintiff[s] in their terms and conditions of employment based on race in violation of Title VII of the Civil Right Act, as amended," the plaintiffs did not identify what adverse employment acts Great Southern took against each plaintiff and, thus, did not show why they were entitled to relief. See Fed.R.Civ.P. 8(a)(2). Moreover, the plaintiffs did not state each claim in a separate count and assert what facts on which they were relying. See Jackson, 372 F.3d at 1270-71; Magluta, 256 F.3d at1284. Thus, although the plaintiffs were not required to allege facts establishing a prima facie case for each of their claims, see Swierkiewicz, 534 U.S. at 510-11, 122 S.Ct. at 997, the plaintiffs failed to sufficiently identify their claims, and the court was required to intervene sua sponte and order the plaintiffs to replead their claims, see Byrne, 261 F.3d at 1133.

**Issue 2:      Claim of hostile work environment**

The plaintiffs next argue that the court erred in dismissing their claim of hostile work environment, based on the court's determination that the plaintiffs did not raised this claim in their amended complaint. The plaintiffs contend that they did not identity theories of discrimination in their amended complaint, other than violations of 42 U.S.C. § 1981 and Title VII retaliation, because they did not know what evidence would be uncovered during discovery, and because they were

5

not required to reveal each element of their prima facie case. The plaintiffs also argue that Great Southern would not have been prejudiced by the plaintiffs' failure to plead this cause of action because the amended complaint contained factual allegations, and the plaintiffs uncovered evidence, during discovery, establishing hostile work environment.

As discussed in Issue 1, the Supreme Court in Swierkiewicz mandated a liberal pleading standard for civil complaints under Rule 8(a)(2). Swierkiewicz, 534 U.S. at 510-11, 122 S.Ct. at 997. "This standard[,] however[,] does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004). We explained in Gilmour as follows:

> Efficiency and judicial economy require that the liberal pleading standard under Swierkiewicz and Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.

Id. at 1315. Moreover, although issues not raised in the pleadings may be treated as if they were properly raised when they either are "tried by express or implied consent of the parties," or "are included in a pretrial order," these exceptions are not applicable if an opposing party objects to the assertion of such a claim without

6

the filing of a supplemental pleading.  Steger v. General Elec. Co., 318 F.3d 1066, 1077 & n.11 (11th Cir. 2003) (citing to Fed.R.Civ.P. 15(b)).

Here, the plaintiffs did not assert in their amended complaint a claim of hostile work environment.  The plaintiffs also have not contended that they either sought leave to amend their amended complaint, or attempted to include a claim of hostile work environment in the pretrial order.  Morever, Great Southern explicitly objected to the plaintiffs raising this claim for the first time in the plaintiffs' brief opposing summary judgment.  See Steger, 318 F.3d at 1077 & n.11.  Thus, the district court did not err in err in dismissing the plaintiffs' claim of hostile work environment.  See Gilmour, 382 F.3d at 1314.

Even if we were to construe the plaintiffs' amended complaint as raising a claim of hostile work environment, no genuine issue of material fact existed on whether the plaintiffs established a prima facie case.  A claim of hostile work environment under Title VII is established on proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quotations omitted).  Thus, a plaintiff wishing to establish a hostile work environment claim must show that

(1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (citing to Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).

The issue whether harassing conduct was "sufficiently severe or pervasive to alter the terms of conditions of his employment"—under the fourth element of this prima facie case—involves both an objective and a subjective component. Miller, 277 F.3d at 1276. The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all of the circumstances." Mendoza, 195 F.3d at 1246. In determining "objective severity," we consider, among other factors, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

Viewing the evidence in the light most favorable to the plaintiffs, the

8

plaintiffs asserted in their opposition brief that the harassing conduct involved cursing,[2] being assigned to inferior older trucks, and being assigned less lucrative paying loads. The plaintiffs, however, failed to show that a genuine issue of material fact existed on whether a reasonable person in their position would have concluded that the alleged harassment was actionable under Title VII. See id.

Indeed, applying the factors set forth in Mendoza, the plaintiffs failed to assert that the conduct was physically threatening or humiliating, or that it interfered with their job performance. The plaintiffs failed to show that any of the alleged conduct, including the cursing, was so "common" or "severe" that it created an atmosphere charged with hostility. See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283-84, 141 L.Ed.2d. 612 (1998) (explaining that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment,'" and "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'" (internal quotations and marks omitted)). Moreover, the "severity and

---

[2] This cursing allegedly consisted of (1) DeWayne Hayes, the Traffic Manager of Great Southern's Mobile plant, telling Hackett, after Hackett refused to take a load, to "[e]ither take your truck or clean your goddamned truck out—take the load or clean your goddamned truck out"; (2) general cursing by Bronson Dulabhan, the dispatcher for Great Southern's Mobile plant, at Stephens in the workplace; and (3) Dulabhan telling Edgar, after Edgar refused to take an overnight load, that "I'm your fucking boss, you know. You do what I want you to do . . .."

9

pervasiveness" of being required to accept certain loads or trucks–even if true–also was belied by the fact that accepting load and truck assignments was part of each driver's job responsibilities at Great Southern. Accordingly, the plaintiffs failed to show that a genuine issue of material fact existed on whether the alleged conduct was sufficiently severe or pervasive to amount to a "discriminatory change in the 'terms and conditions of employment.'" See Harris, 510 U.S. at 21, 114 S.Ct. at 370.[3]

## Issue 3:     Prima facie case under Title VII

The plaintiffs generally argue that the court erred in granting summary judgment on their Title VII claims. In their introductory section, the plaintiffs contend, without citing to the record, that they suffered adverse employment actions when they were treated less favorably than white drivers in load assignments, truck assignments, and discipline, and that they were retaliated against for exercising their "federally protected rights." The plaintiffs also argue that the court erroneously implied in its opinion granting Great Southern summary

---

[3] In addition, as Great Southern contends, the claim of hostile work environment was due to be dismissed because the plaintiffs failed to satisfy Title VII's statutory prerequisites for this claim, that is, they conceded that they failed to include it in their charge with the Equal Employment Opportunity Commission ("E.E.O.C."). See Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) (although "the scope of an E.E.O.C. complaint should not be strictly construed," under the statutory exhaustion requirement, "a plaintiff's judicial complaint is limited by the scope of the E.E.O.C. investigation which can reasonably be expected to grow out of the charge of discrimination").

judgment that the plaintiffs, in establishing adverse-employment actions, had to show that their employment was terminated or that they suffered an economic detriment.

Furthermore, the plaintiffs assert that the court impermissibly made credibility determinations and weighed the evidence by (1) determining that white drivers, Mike Oliveira, Lee Bull, Edward Kirkland, Shelby Jones, and Scott McMichael, were not proper comparators; and (2) concluding that summary judgment was appropriate when "the plaintiffs presented numerous other evidence of discrimination [other than pointing to white comparators]." Finally, the plaintiffs contend that, in the interest of preserving space, they are incorporating their opposition to the summary judgment, which contained facts and arguments showing that the plaintiffs established a prima facie case as to all of their claims.

As a preliminary matter, to the extent the plaintiffs are seeking to incorporate arguments from their brief in opposition to summary judgment, an appellant's brief on appeal must contain, in relevant part, his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies," see Fed.R.App.P. 28(a)(9)(A). In Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A., 377 F.3d 1164, 1167 n.4 (11th Cir. 2004), we examined an appeal in which the appellant, in a footnote in its brief, purported

11

to "incorporate [] the [additional] arguments it presented below." We determined that the appellant was attempting to (1) bypass the rules governing space limitations, and (2) "transfer its duty to make arguments to the judges of [this Court]." Id. Ultimately rejecting the practice of incorporating by reference arguments made to district courts, we concluded that the appellant had not properly presented these arguments for review. Id.; see also AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1308 (11th Cir. 2004) (concluding that one appellant had abandoned its argument by not renewing the argument on appeal). Because these plaintiffs, similar to the appellants in Four Seasons Hotel and AAL High Yield Bond Fund, are improperly seeking to incorporate their earlier arguments, we decline to review any arguments not raised in the plaintiffs' appellate brief. See Four Seasons Hotels, 377 F.3d at 1167 n.4; see also AAL High Yield Bond Fund, 361 F.3d at 1308.

A court's order granting summary judgment is reviewed de novo, "view[ing] all evidence and all factual inferences therefrom in the light most favorable to the non-moving party." Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004). "Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." Id. at 1259 (quotation omitted). "Summary judgment is

12

appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quotation omitted). To survive a motion for summary judgment, the nonmoving party must proffer evidence beyond what is asserted in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.E.2d 265 (1986) (citing Fed.R.Civ.P. 56(e)). Where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact exists. Id. at 322-23, 106 S.Ct. at 2552.

To the extent the plaintiffs are arguing that a genuine issue of material fact existed on their claims of disparate treatment and retaliation, Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Furthermore, it is unlawful under Title VII for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

13

under this subchapter [of Title VII]." 42 U.S.C. § 2000e-3(a).

Where direct evidence of discrimination or retaliation is unavailable—as was the case here—a plaintiff, nevertheless, may present circumstantial evidence of discrimination sufficient to create a jury question. Silvera v. Orange County School Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) (Title VII disparate treatment); Sullivan v. National Railroad Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999) (Title VII retaliation). For claims based on circumstantial evidence, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Silvera, 244 F.3d at 1258. If the plaintiff is successful, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Id. The plaintiff then may attempt to demonstrate that the proffered reason was, in fact, merely pretext for the defendant's acts. Id.[4] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. Moreover, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the [defendant] is entitled to summary judgment."

---

[4] The Supreme Court set out this three-part burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc) (discussing pretext in context of discrimination involving age and disability).

"A plaintiff establishes a prima facie case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). Assuming for purposes of argument that the plaintiffs, in arguing their claims of disparate treatment, established the first three elements of this prima facie case, they failed to show that they were treated less favorably than a similarly situated employees outside of their protected class. "To show that employees are similarly situated, the plaintiff must show that the 'employees are similarly situated in all relevant respects.'" Knight v. Baptist Hospital of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (quotation omitted). Indeed, "the comparator must be nearly identical to the plaintiff, 'to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091 (quoting Silvera, 244 F.3d at1259).[5]

---

[5] In examining claims that employees were disciplined in a disparate manner, we have explained that "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." See Maynard v. Bd of Regents of Universities of Fla. Dept. of Educ., 342 F.3d 1281, 1289. Different panels of this Court, however, have determined that this conduct requires "similar" conduct, see e.g. Jones v. Gerwins, 874 F.2d 1534, 1540 (11th Cir. 1989), as opposed to "nearly identical" conduct, see e.g. Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999). See Maynard, 342 F.3d at 1290.

Here, the only comparator the plaintiffs identified in their amended opposition to summary judgment was Oliveira, asserting that Great Southern did not terminate Oliveira's employment as quickly as it terminated Hackett's employment, based on the same misconduct. However, in determining that Oliveira was not similarly situated, the court properly considered the undisputed evidence that Hackett's employment was terminated because Great Southern believed that he twice failed to report within 48 hours a speeding ticket and that he had received two speeding tickets within 12 months. Oliveira, on the other hand, reported within 48 hours all of the speeding tickets that he received, and his termination was based solely on his involvement in accidents. Thus, whether we apply the "similar" or "nearly identical" analysis, Oliveira was not a proper comparator. See Maynard, 342 F.3d at 1290.

Even in the absence of evidence showing that a similarly situated, non-protected employee has been treated differently, a plaintiff may be able to establish, by circumstantial evidence, a prima facie case of discriminatory animus. See Jones v. Bessemer Carraway Medical Center, 151 F.3d 1321, 1322-24 (11th Cir. 1998). Nevertheless, although the plaintiffs summarily argue on appeal that they presented "numerous other evidence of discrimination," they have not cited to

supporting evidence in the record.  Thus, the district court did not err in concluding that no genuine issue of material fact existed on whether the plaintiffs established a prima facie case of Title VII disparate treatment.

To the extent the plaintiffs also were attempting to establish a prima facie case of Title VII retaliation, to successfully assert such a claim, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004).  To be considered an adverse employment action under Title VII's anti-retaliation provision, the action "must either be an ultimate employment decision or else must 'meet some threshold level of substantiality.'"  Stavropoulos v. Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004) (citation omitted), cert. denied, No. 04-1099 (U.S. April 18, 2005).  Ultimate employment decisions include decisions such as termination, failure to hire, or demotion.  Id. at 617.

The only preserved ultimate employment decision to which the plaintiffs cited in their amended complaint, which was supported by record evidence, was Great Southern's termination of Hackett's employment.  However, as discussed below, the plaintiffs failed to produce anything tending to show that Great Southern's non-discriminatory reason for this termination was pretextual.

17

Otherwise, the acts on which the plaintiffs relied, that is, load assignment and "write-ups," were not ultimate employment actions. Moreover, the plaintiffs failed to explain why these acts met "some threshold level of substantiality." See id. at 618 (explaining that "not everything that makes an employees unhappy is an actionable adverse action," and that an adverse employment action involves conduct that "alters an employee's compensation, terms, conditions, or privileges of employment"); see also Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (change in "the terms, conditions, or privileges of employment" must be "serious and material"). Thus, the district court also did not err in concluding that no genuine issue of material fact existed on whether the plaintiffs, other than Hackett, successfully alleged a prima facie claim of Title VII retaliation. See Cooper, 390 F.3d at 740.

**Issue 4:       Pretext**

The plaintiffs argue for the first time on appeal that, if Great Southern had non-discriminatory reasons for taking employment actions, such as considering several factors when making load assignments, the plaintiffs' claims, instead, involved "disparate impact" from such a neutral policy, and the plaintiffs, therefore, were not required to show intentional discrimination. The plaintiffs also generally contend that Great Southern "failed to rebut the presumption of

retaliation established by the plaintiffs' prima facie case by producing legitimate, non-discriminatory reasons worthy of belief for the adverse employment actions to which the plaintiffs were subjected." The plaintiffs contend that Hayes's credibility was "suspect" because "the earning potential of drivers was greatly impacted by his subjective decision of what load to assign to whom," and he stated in one part of his deposition that both that he and White terminated Hackett's employment, but in another part that White terminated it. Finally, the plaintiffs generally argue that the jury "reasonably [could have] infer[red] that [Great Southern] [was] dissembling to cover up a discriminatory purpose."

Where pretext is an issue, the question the factfinder must answer is whether the employer's proffered reasons were "a coverup for a . . . discriminatory purpose." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("we are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [its] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision"). The court, considering all of the evidence, ascertains whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons, sufficient to allow a reasonable factfinder to determine that these reasons were "not what actually motivated its conduct." Silvera, 244 F.3d at 1258. In casting such doubt, the

plaintiff may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence." Id.

To the extent Hackett alleged a prima facie case of retaliation and he offers argument on why Great Southern's reasons for its acts were pretextual, Great Southern presented testimony from Robert White, the General Manager of Great Southern's plant in Mobile, Alabama, that he decided to terminate Hackett's employment based on company safety policy because Hackett had twice failed to report speeding tickets within 48 hours and had received two speeding tickets within a 12-month period. Although the plaintiffs, at least in the district court, challenged the wisdom of this decision, federal courts do not sit as "super-personnel department[s]" that reexamine entities' business decisions. See Chapman, 229 F.3d at 1030. Thus, "if the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." See Wilson, 376 F.3d at 1088.

Moreover, although the plaintiffs argue that Hayes's credibility was "suspect" because he testified inconsistently during his deposition, and although the identification of inconsistencies in an employer's testimony can be evidence of

20

pretext, see Tidwell v. Carter Products, 135 F.3d 1422, 1428 (11th Cir. 1998), this testimony was not inherently inconsistent. Indeed, although Hayes testified that "Bob White and I terminated Willie Hackett," Hayes later clarified that both managers executed the termination, while White, as the General Manger of Great Southern's plant in Mobile actually made the termination decision. See Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997) (concluding that, although defendant, in explaining its decision to terminate certain employees, stated both that seniority played no role in the process and that only employees' performances were considered, while, on the other hand, stating that an employee was discharged because he had the least seniority, its reasons were not necessarily inconsistent).[6] Accordingly, we conclude that, to the extent that the plaintiffs established a prima facie case of disparate treatment or retaliation, the court properly granted Great Southern summary judgment because the plaintiffs failed to show that Great Southern's proffered reasons for taking employment actions were pretextual.

**Issue 5:        Discrimination claim under 42 U.S.C. § 1981**

---

[6] To the extent the plaintiffs also generally cited to Hayes's discretion in making employment decisions, we have explained that "an employer's use of subjective factors in making [] decision[s] does not raise a red flag. Certainly nothing in our precedent established that an employer's reliance upon legitimate, job-related subjective considerations suggests in its own right an intent to facilitate discrimination." See Wilson, 376 F.3d at 1088 (quotation omitted).

21

The plaintiffs summarily argue that the court, in granting Great Southern summary judgment, erred in failing to address their § 1981 claims. However, outside of citing to § 1981 in their jurisdictional section, the plaintiffs failed to allege § 1981 claims in their amended complaint. Indeed, the plaintiffs cited specifically to Title VII in each individually numbered preserved claim in their amended complaint.

Nevertheless, even if we were to construe the plaintiffs' complaint as raising § 1981 claims that were based on the same facts to which they cited in asserting their Title VII discrimination claims, we have concluded that "both of these statutes, i.e. [§] 1981 and Title VII[,] have the same requirements of proof and use the same analytical framework." Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002) (quotation and internal marks omitted). Thus, we conclude that the plaintiffs could not establish prima facie discrimination cases under § 1981 for the same reasons as were applicable under Title VII.

Moreover, to the extent the court dismissed as time barred the plaintiffs' Title VII claims that Great Southern "assigned better equipment and newer trucks to white drivers without regard to seniority and rotational policy," these claims would have accrued, if at all, in 1998, when Great Southern discontinued assigning loads based on seniority. Their claims, therefore, still would have been

22

time barred under the four-year statute of limitation applicable for § 1981 claims of discrimination when they filed their initial complaint in June 2003.  See Cooper, 390 F.3d at 727 n.19 (recognizing that the Supreme Court in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, ___, 124 S.Ct. 1836, 1945, ___ L.Ed.2d. ___ (2004), held that claims under § 1981 were governed by the four-year federal "catch-all" statute of limitations, but that the plaintiffs waived this argument). Thus, even if the plaintiffs asserted § 1981 claims in their amended complaint, Great Southern also was entitled to summary judgment on these claims.

**Issue 6:     Order striking discovery**

Finally, the plaintiffs argue that the district court abused its discretion in granting Great Southern's motions to strike discovery.  The plaintiffs generally argue that "[t]he law prefers that cases be decided on their merits[,] not upon procedural missteps."  The plaintiffs also contend that the court should not have struck the contested affidavits from their coworkers and should have granted the plaintiffs leave to file their own untimely declarations because (1) this discovery was filed well in advance of trial; (2) their coworkers' affidavits were rebuttal evidence; and (3) the court, in not considering this evidence, failed to view the evidence in the light most favorable to the plaintiffs.

"We review evidentiary rulings made by the district court for abuse of

23

discretion and will reverse the district court's decision only in cases where substantial prejudice exists." Hall v. United Ins. Co. of America, 367 F.3d 1255, 1259 (11th Cir. 2004). Indeed, "[t]he district court has a range of options; and so long as the district court does not commit a clear error in judgment, we will affirm the district court's decision." Young v. City of Palm Bay, Fla., 358 F.3d 859, 863 (11th Cir. 2004).

To the extent the plaintiffs are challenging the district court's order granting Great Southern's motion to strike the contested affidavits, Fed.R.Civ.P. 26(a)(1)(A) provides:

> Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties: (A) the name . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

Fed.R.Civ.P. 26(a)(1)(A). Parties also must supplement their Rule 26 disclosures at appropriate intervals. Fed.R.Civ.P. 26(e)(1). Parties who fail to satisfy these disclosure and supplementation requirements are prohibited, pursuant to Fed.R.Civ.P. 37(c)(1), from using the undisclosed evidence "at trial, at a hearing, or on a motion," unless the failure is harmless. Fed.R.Civ.P. 37(c)(1). In reviewing for abuse of discretion a court's exclusion of a non-disclosed witness, we consider "(1) the importance of the testimony, (2) the reasons for the

24

appellant's failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify."  Bearint ex rel. Bearint v. Dorel Juvenile Group, Inc., 389 F.3d 1339, 1353 (11th Cir. 2004).

Here, the plaintiffs neither listed the affiants of the contested affidavits in their initial disclosures under Rule 26(a), nor attempted to supplement their disclosures with this information under Rule 26(e).  The plaintiffs also failed to give a reason for these failures, to explain why the exclusion of this evidence was overly prejudicial to them.  Indeed, despite the court's order striking this evidence, the court explicitly stated that it considered this evidence in deciding Great Southern's motion for summary judgment.

Furthermore, although the plaintiffs argued that disclosure was unnecessary because the contested affidavits were impeachment evidence, they failed to show that this evidence was offered solely for impeachment purposes.  See id. ("only evidence used solely for impeachment is exempt from the Federal Rules' disclosure requirement").  Thus, the district court did not abuse its discretion in granting Great Southern's motion to strike this evidence.  See Hall, 367 F.3d at 1259; see also Cooper, 390 F.3d at 728 ("it was within the sound discretion of the trial judge to sanction plaintiffs for their failure to disclose by enforcing the unambiguous terms of Rule 37(c)").

To the extent the plaintiffs also are challenging the court's denial of their request to supplement their materials submitted in opposition to summary judgment with their own declarations, on May 21, 2004, the court (1) extended the parties' discovery deadline until June 4, 2004; (2) allowed the plaintiffs until June 7, 2004, to supplement their opposition; (3) directed Great Southern to file any responses by June 14, 2004; and (4) notified both parties that the motion for summary judgment would "be taken under submission for determination on that day, without oral argument." On June 14, 2001, the court entered an order, extending the period for filing submissions in support of, or in opposition to, summary judgment until June 21, 2004. On June 28, 2004, the plaintiffs sought leave from the court to amend their opposition to summary judgment to include new declarations by four of the five plaintiffs, but did not explain why they failed to file these submissions by the court-ordered deadline.

Indeed, the plaintiffs offered no explanation for why they did not timely file their own declarations and did not explain why these declarations involve "newly discovered evidence." The plaintiffs also did not argue why they would be prejudiced if the court did not consider this evidence. Moreover, the plaintiffs have failed to show prejudice because, similar to the contested affidavits, the court considered these declarations before granting Great Southern summary judgment.

26

Thus, the plaintiffs also have failed to show that the district court abused its discretion in denying them leave to amend their opposition to include their own untimely declarations. See Hall, 367 F.3d at 1259; see also Wayne v. Jarvis, 197 F.3d 1098, 1106-07 (11th Cir. 1996) (concluding that district court did not abuse its discretion in denying the plaintiff leave to depose a witness outside of the allowable discovery period when the plaintiff failed to explain why he did not conduct this deposition at an earlier date).

Accordingly, we conclude that the district court did not err in striking the plaintiffs' original defective complaint, did not err in finding waived or granting summary judgment on the plaintiffs's claims, and did not abuse its discretion in granting Great Southern's motions to strike discovery that either was from witnesses that were undisclosed previously, or was produced after the discovery deadline. We, therefore, affirm.

**AFFIRMED**.