Abraham **WALLACE** et al., Plaintiffs

v.

**NCL (BAHAMAS), LTD.**, Defendant.

No. 09–21814–CIV–JORDAN.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 30, 2010.

**690**

Charles R. Lipcon, Jason Robert Margulies, Carlos Felipe Llinas Negret, Michael A. Winkleman, Lipcon Margulies & Alsina, Miami, FL, for Plaintiffs.

Sanford Lewis Bohrer, Alex M. Gonzalez, Israel Jovanny Encinosa, Scott Daniel Ponce, Holland & Knight, Miami, FL, for Defendant.

### Order Adopting Report and Recommendation & Denying Motion for Class Certification

ADALBERTO JORDAN, District Judge.

Upon de novo review of the record, including the objections filed by the plaintiffs, I

adopt Magistrate Judge McAliley's report and recommendation on plaintiff's motion for class certification and orders on related motions [D.E. 248]. Accordingly, the plaintiffs' motion for class certification [D.E. 141] is DENIED.

The plaintiffs raise four objections [1] to the report and recommendation. None of the objections or arguments raised by the plaintiffs, however, show that class certification is appropriate here.

First, the plaintiffs object to the report's concerns that the plaintiffs may not adequately represent the class members as Rule 23(a)(4) requires. Although Judge McAliley noted that she had concerns about the plaintiffs' adequacy, she did not rule on the specific issue. And Judge McAliley correctly noted that eleven of the putative class representatives provided no information about themselves and hence have not shown that they would adequately prosecute the class action. The plaintiffs added affidavits by three of the eleven missing putative class members, but no evidence suggests that the other eight putative class members would adequately represent absent class members. Regardless, certification is inappropriate for the other reasons mentioned in the report and recommendation.

The plaintiffs' second objection—that the common issues of law and fact predominate all individualized questions of fact—is more complex but nonetheless misses the mark. In their second objection, the plaintiffs note the common issues in this case: that NCL allegedly engaged in a fleet-wide practice of assigning senior stateroom stewards unreasonable amounts of work in an unreasonable time frame. These common issues, the plaintiffs contend, predominate the individualized issues. Like Judge McAliley, I disagree.

---

1. Although the plaintiffs state that they also object to the report's findings that the proposed class did not satisfy the requirements of Rule 23(b)(1)(B) [D.E. 256 at 3], the plaintiffs never explain how or why they object. The only argument pushed by the plaintiffs concerning the requirements of Rule 23(b)(1)(B) is that, "if this matter is not certified as a class action, there could be as many as 460 separate lawsuits,

reaching varying adjudications on key issues" [D.E. 141 at 25]. Yet Eleventh Circuit law is clear that "the possibility that an action will have either precedential or stare decisis effect on later cases is not sufficient to satisfy Rule 23(b)(1)(B)." *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1546 (11th Cir.1987). The plaintiffs have thus not shown that certification is proper under Rule 23(b)(1)(B).

It is true that, as the plaintiffs argue, the proposed class would share many issues of fact and law. But, "[w]here, after adjudication of the classwide issues, plaintiffs must *still* introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir.2004) (emphasis added). Here, even after they prove the legal and factual issues that they share, the plaintiffs must introduce an overwhelming amount of individualized proof.

Assume that the plaintiffs prove that NCL had a fleet-wide practice of assigning stateroom stewards an unreasonable amount of work in an unreasonable amount of time. Assume that the plaintiffs further prove that the stewards all have the same collective-bargaining agreement with NCL. That is, the plaintiffs prove all factual and legal issues shared by the class members. But assume, as well, that one or more hypothetical class members never needed helpers to do their job. These hypothetical class members, rather, completed their assignments on their own. The plaintiffs cannot (and do not) contest that, in that scenario, NCL is not liable to the hypothetical class members. After all, the hypothetical class members never lost wages.

Or imagine instead that the hypothetical class members hired helpers for personal reasons unrelated to NCL's practice of assigning an unreasonable amount of work. For example, the hypothetical class members hired relatives as helpers because they needed the money. The hypothetical class members could have done the work on their own but preferred to help relatives in need. Again, in this situation, because NCL's policy did not cause the hypothetical class members' wage decrease, no liability arises.

And yet another possibility exists. It is possible that sometimes the stewards hired helpers because they could not finish their work in the allotted time, but that at other times the same stewards hired helpers for personal reasons. At that point, the parties would need to take discovery on what percentage of the time each individual steward hired a helper for personal reasons and what percentage of the time each individual steward hired a helper because of necessity.

In addition, NCL has shown that some stateroom stewards did not hire any helpers and that some stateroom stewards hired helpers for personal reasons. For every class member, then, the parties would have to take discovery on whether the class member hired a helper. And, if the class member hired a helper, the parties would need to discover why. If the parties do not answer these questions, liability cannot be proven. These questions, in addition, arise for every proposed class member. And the questions, without a doubt, arise from individualized facts. Because these questions arise for every class member and because their answers depend on individualized facts, these questions, and not those that the plaintiffs share in common, predominate. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1273–74 (11th Cir.2009).

The plaintiffs do not even attempt to offer a response to these points, arguing instead that, by proving that NCL had a fleet-wide policy, the plaintiffs would prove liability. Yet this merely assumes that all class members were harmed by the policy—that they hired helpers and that they did so because of NCL's fleet-wide policy. The record reflects that neither assumption is proper. The plaintiffs also attempt to masquerade this deficiency by arguing that by proving their legal theory, they prove that it was *impossible* for senior stateroom stewards to complete their work in the allotted time without work. But NCL has shown that some stateroom stewards completed their work without help. Thus, the plaintiffs cannot generally prove that it was impossible for senior stateroom stewards to complete their work.

Similarly, the issue of damages is so fact specific as to demand a member-by-member analysis. For each member, the parties would need to show how many times a class member hired a helper, how much each class member paid his helpers, and how many times each class member hired a helper because of necessity and how many times because of personal reasons. This is one of

those cases where "the computation of each individual's damages will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Klay*, 382 F.3d at 1260.

Continuing with the same objection, the plaintiffs quote the summary-judgment order previously decided in this case and argue that the order vindicates their argument. This argument fails as well.

In its motion for summary judgment, NCL argued that no genuine issue of material fact existed as to whether its policy forced the plaintiffs to hire helpers. NCL attached affidavits showing that some stewards never hired helpers. According to NCL, because *some* stewards could complete their work without helpers, this showed that the *plaintiffs* could complete their work without helpers. In the summary judgment order, I disagreed with NCL, concluding that a fact finder could believe that the plaintiffs (and stewards generally) could not have finished their work in the allotted time without a helper. But this does not suggest, as the plaintiffs argue, that NCL's policy would create de facto liability as to all stewards. Even if the policy made it generally difficult for stewards to complete their jobs without help, the parties would have to address the specific facts for every steward. After all, liability could not run in situations where a steward completed his job without the help of helpers.

In their third and fourth objections, the plaintiffs argue that this case would not be unmanageable and that therefore a class action is superior to other means of litigation. But the plaintiffs never show how, exactly, 500–plus stewards—most no longer working for NCL and working in different locations around the world—will get notice of this action. Unlike the cases mentioned by the plaintiffs, most class members here no longer work for NCL, so NCL cannot simply give the stewards notice. And the plaintiffs fail to explicate how NCL could cheaply and accurately depose 500–plus stewards, scattered throughout the world, to ask whether they hired a helper and for what reason.

Indeed, the plaintiffs showed a stubborn unwillingness to travel to the United States for mediation. At the time, the plaintiffs argued that they should not be penalized for being poor and that "requiring them to mediate in the United States would force these destitute seafarers to bear prohibitive travel costs which they simply cannot afford" [D.E. 110 at 1].[2] Now, after it appears that the plaintiffs may lose on their motion for class certification, the plaintiffs' attorneys toss the previous strategy away and promise to cover all necessary expenses. The plaintiffs and their attorneys vehemently clamored against the costs of bringing 20 individuals to Miami. I cannot imagine how they plan to bring 500–plus seafarers to Miami. The plaintiffs' about-face is far too late.

Lastly, in an attempt to salvage their class action, the plaintiffs offer a short, three-page "proposed class action trial plan." The proposed plan, however, does not resolve any of these concerns.

### REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND ORDERS ON RELATED MOTIONS

CHRIS McALILEY, United States Magistrate Judge.

Pending before the Court is Plaintiffs' Motion for Class Certification [DE 141], Plaintiffs' Motion to File Under Seal the Motion for Class Certification [DE 140], Plaintiffs' Motion for Leave to File Under Seal Certain Exhibits to the Reply [DE 196], Defendant's Motion to Strike the Reply [DE 199] and Plaintiffs' Motion for Leave to File Corrected Exhibits B & C to Plaintiffs' Reply in Support of Class Certification. [DE 213]. These motions have been extensively briefed, [DE 172, 173, 190, 191, 214, 215, 219], and were referred to me by the Honorable Adalberto Jordan. [DE 220, 241].

For the reasons set forth below, I recommend that the Motion for Class Certification be denied. I further grant in part Plaintiffs' motions to filed under seal [DE 140; 196],

---

**2.** After litigating the issue twice, only five of the putative class representatives traveled to the United States for mediation.

grant Plaintiffs' motion to file corrected exhibits [DE 213], and deny Defendant's motion to strike. [DE 199].

## I. Background

Plaintiffs, thirty-two present or former senior stateroom attendants employed by Defendant, NCL (Bahamas) Ltd., filed a four-count complaint for declaratory judgment (Count I), wages and penalties under 46 U.S.C. § 10313 of the Seamen's Wage Act (Count II), loss of retirement benefits (Count III), and bad faith (Count VI).[1] [DE 24–1]. This Court is very familiar with this lawsuit, as a number of issues have been litigated. Judge Jordan, in his Order on Defendant's Motion to Dismiss, summarized Plaintiffs' claims as follows:

> This case involves a labor dispute between NCL and several of its senior stateroom stewards. The plaintiffs' employment is governed by the Collective Bargaining Agreement.... The plaintiffs claim that NCL assigns them each an amount of work that cannot feasibly be completed in the time allotted without additional help. The amount of work and time frame forced the plaintiffs to hire additional help to complete their required tasks and to pay for the additional help out of their paychecks. NCL knew that the plaintiffs could not complete the tasks alone and knew that they were hiring and paying other crew members to help finish the work. After complaints by many stateroom stewards, NCL conducted an investigation into these allegations, and at the end of the investigation, fired some of the plaintiffs without just cause. Because NCL fired the plaintiffs, they are no longer eligible to participate in NCL's retirement plan.

[DE 223, p. 1]. Judge Jordan granted Defendants' motion to dismiss Count I, declaratory judgment, and Count III, loss of retirement benefits. [DE 223, pp. 2–4]. He also granted partial summary judgment for Defendant on Counts II and IV. As for Count II, Judge Jordan found that Plaintiffs could bring claims under the Seaman's Wage Act for wages earned on some, but not all, of the voyages on which they worked during the relevant time period; thus he granted summary judgment regarding claims arising from certain voyages. To clarify the matter, he ordered the parties to file a joint stipulation indicating "which plaintiffs and which voyages remain in this case...." [DE 222, p, 12]. As for Count VI, the Court granted summary judgment "insofar as it relates to retirement benefits. Count IV remains insofar as it relates to failure to pay full wages." [DE 222, p. 12].[2]

On October 8, 2010, the parties filed a joint stipulation setting forth the 64 voyages they agree remain in the case under Count II, and noting that they disagree about whether seven additional voyages fall within the relevant time period because the days the Plaintiffs were discharged from these voyages occurred after the last day of the class period, June 14, 2009. [DE 229, p. 1]. Plaintiffs also filed notice that they believe that an additional 39 voyages are included in their claim under Count IV. [DE 230].[3]

Thus, after resolution of the motions to dismiss and for summary judgment, Plaintiffs' remaining claims are: (1) Count II, the claim under the Seaman's Wage Act for the voyages defined by the Court in its summary judgment order and (2) the claim for breach of the covenant of good faith and fair dealing in connection with the Defendant's alleged failure to pay full wages. The Court considers Plaintiffs' motion for class certification in light of these narrowed claims.

## II. Analysis

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify a class of:

> employed by Defendant during the relevant time period. [DE 222, p. 4].

---

1. The Court has construed Count IV as a claim for breach of the covenant of good faith and fair dealing. [DE 223, p. 4].

2. The Court also entered summary judgment on all counts against Plaintiff Leon Romans because the undisputed evidence showed that he was not

3. To decide the question of class certification, it is not necessary to resolve the parties' dispute about which voyages are subject to Plaintiffs' remaining claims.

all current and former employees of Norwegian Cruise Lines Ltd. and/or NCL (Bahamas) Ltd. employed at any time during the period of May 14, 2006 to June 14, 2009 as "senior cabin stewards" (or "senior cabin stewardesses") or "senior stateroom attendants" on Norwegian's vessels who are covered by the Collective Bargaining Agreement between NCL (Bahamas) Ltd. and Norwegian Seafarers' Union, dated December 23, 2004, as renewed thereafter, and who were discharged from their respective vessels whose voyage started or ended in U.S. Ports and Harbors.

[DE 24–1, p. 6; 141, p. 2]. Before the Court will certify a class under Rule 23, Plaintiffs must show that they satisfy the requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of both class Plaintiffs and class counsel. Fed. R.Civ.P. 23(a). Plaintiffs must also show that the proposed class meets the requirements of at least one category set forth in Rule 23(b). Fed.R.Civ.P. 23(b). The burden of establishing the Rule 23 requirements is on Plaintiffs. *Heaven v. Trust Company Bank,* 118 F.3d 735, 737 (11th Cir.1997).

Before addressing Plaintiffs' class certification motion, I turn to the collateral motions pending before the Court.

## A. Motions to Seal

Plaintiffs have moved to seal the class certification motion and certain exhibits to their reply in support of the class certification motion, pursuant to the terms of the parties' confidentiality agreement. [DE 140; 196]. In response to an Order to Show Cause, the Plaintiffs stated that they have no opposition to unsealing the motion and the sealed reply exhibits. [DE 243]. Defendants have no objection to unsealing the motion, but request that Exhibits 11, 12, and 15 to the motion and one page of Exhibit Q to the reply remain sealed. [DE 244, p. 1]. The exhibits to the motion are primarily excerpts from Defendant's proprietary ship operations manual and the reply exhibit contains information regarding budgeted reve-

nue targets. [DE 244, pp. 2–3]. I find that Defendant has satisfied its burden under Local Rule 5.4 for these exhibits to remain under seal.

## B. Motion to Strike and to File Corrected Exhibits

Defendant moves to strike Exhibits A–C, E–L, M–N, P–Q and S to Plaintiffs' reply and those portions of the reply that rely on those exhibits. [DE 199, p. 10]. Defendant contends that all of these exhibits are new evidence in support of the class certification motion, not rebuttal material, and that Plaintiffs should not be permitted to introduce new evidence in the reply stage. Defendant states "[i]n this context, rebuttal would be Plaintiffs attempting to explain why the evidence they submitted *with the motion* was sufficient and established the elements of Rule 23. Rebuttal is *not* offering new evidence after NCL filed its response to the motion, and arguing that the new evidence satisfies the burden of proof and the elements of Rule 23." [DE 199, p. 2] (emphasis in original). Defendant does not contend that the reply exhibits raise new issues; rather Defendant simply argues that the exhibits should have been presented earlier, with the class certification motion.

In making this motion Defendant cites law from other jurisdictions and ignores Local Rule 7.1(c)(3), which provides: "The movant may serve a reply memorandum with *affidavits, declarations, or other materials* provided that all such materials are strictly limited to rebuttal of matters raised in the opposing memorandum." S.D.Fla.L.R. 7.1(c)(3) (emphasis added).[4] Because our Local Rules specifically allow new evidence to be presented with a reply, as rebuttal, this Court will apply that Rule.

In Exhibit B to the reply, Plaintiffs filed twenty affidavits of putative class members, and Defendants moves, in particular, to strike those affidavits for two different reasons. First, Defendant complains that, with the exception of two affiants, Plaintiff did not identify these individuals in their initial and

---

4. Defendant does acknowledge this provision in its reply, but merely rehashes the arguments

made in the motion. [DE 219, p. 3].

supplemental disclosures; as a result Defendant did not know to conduct discovery about them. Relying on Rule 37(c)(1), Defendant argues that Plaintiffs can not use their testimony in support of their motion.[5] [DE 199, pp. 4–8]. As a second reason for striking the affidavits, Defendant states that fifteen of them contain materially false information regarding the ships the affiants worked aboard during the class period. [*Id.* at pp. 8–10].

Plaintiffs address the second argument (challenging the accuracy of fifteen of the affidavits) by seeking permission to file corrected affidavits (a corrected Exhibit B to the reply) and a corrected chart that distills information from the affidavits (a corrected Exhibit C). [DE 213]. Plaintiffs concede that the original affidavits had incorrect information but explain that the affiants had to rely on their memory of which ships they worked on during the class period, because Defendant refused to produce in discovery employment records needed to confirm these voyages.[6] [DE 213, p. 2]. Plaintiffs explain that once Defendant produced this information as part of its motion to strike, the affiants were able correct their affidavits, along with the corresponding chart. [DE 213, p. 3]. Defendant did not file an opposition to Plaintiffs' motion to file corrected exhibits, and I find that Plaintiffs have presented good cause to file the corrected Exhibits B and C.

Addressing whether Rule 37(a) precludes Plaintiffs from relying on the affidavits in Exhibit B, Plaintiffs assert that they provided Defendant sufficient notice of these witnesses because they were identified in Plaintiffs' initial disclosures as "[a]ll other similarly situated seafarers as Plaintiffs and members of the putative class, and potential members of the proposed class," and in also in certain correspondence with Defendant. [DE 215, p. 8]. Plaintiffs' disclosures do not appear to be sufficient to identify a witness as required by Rule 26(a)(1)(A), which provides that a party must disclose the name,

and if known, address and telephone number of the potential witness.

When deciding whether to exclude testimony under Rule 37(c)(1) for failure to identify a witness as required by Rule 26(a), courts typically consider (1) the importance of the testimony, (2) the reasons for the failure to disclose, and (3) prejudice to the opposing party. *See Cooley v. Great Southern Wood Preserving,* 138 Fed.Appx. 149, 161 (11th Cir.2005). These factors, and the circumstances presented here, lead me to decide to not strike the affidavits in Exhibit B.

First, I do not rely on Exhibit B in reaching my recommendation on class certification; that being the case, Plaintiffs' late-filing of these affidavits does not prejudice Defendant. However, I am issuing a Report and Recommendation on class certification, which Judge Jordan will review *de novo,* and I am reluctant to limit the information available to him. Moreover, if Judge Jordan were to consider the affidavits, I am not persuaded that the timing of their filing does, in fact, prejudice Defendant. Specifically, I question whether, had Plaintiffs listed all the potential class members by name, Defendant would have chosen to depose any of them, given that Defendant did not even depose all of the named class plaintiffs, and knowing that Defendant would have had to subpoena these non-party witnesses, all of whom reside outside the forum. Moreover, Defendant had access to all employment records for these affiants, and was able to verify much of the content of their affidavits, which of course allowed them to point out the inaccuracies in those affidavits.[7]

Thus, after considering the motions, Exhibit B and the *Cooley* factors, I grant Plaintiffs' motion to file corrected exhibits and deny Defendant's motion to strike.

---

**5.** Rule 37(c)(1) provides:

If a party fails to ... identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless.

**6.** Defendant, in turn, argues that Plaintiff never made a formal request for this information. [DE 219, p. 6]

**7.** In the terms of Rule 37(c)(1), I find that Plaintiffs' failure to specifically identify these affiants in their Rule 26 disclosures was harmless.

## C. The Class Definition is Sufficient

Plaintiffs define the class as:

all current and former employees of Norwegian Cruise Lines Ltd. and/or NCL (Bahamas) Ltd. employed at any time during the period of May 14, 2006 to June 14, 2009 as "senior cabin stewards" (or "senior cabin stewardesses") or "senior stateroom attendants" on Norwegian's vessels who are covered by the Collective Bargaining Agreement between NCL (Bahamas) Ltd. and Norwegian Seafarers' Union, dated December 23, 2004, as renewed thereafter, and who were discharged from their respective vessels whose voyage started or ended in U.S. Ports and Harbors.

[DE 24–1, p. 6]. Defendants argue that this definition is inadequate because, to determine membership in the class, the Court must address a number of individualized issues: (1) the ports visited; (2) the various ports of discharge; (3) whether each potential class members hired a helper; (4) whether each helper was hired only because the class member could not timely complete his or her work; (5) whether NCL rejected the class member's request, for assistance; and (6) if NCL acted without "sufficient cause." [DE 172, pp. 7–14].[8]

■ "Before analyzing the Rule 23(a) requirements, or as part of the numerosity inquiry, a court must determine whether the class definition is adequate." *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D.Fla.2006). In making this determination, "courts consider whether the proposed definition specifies a particular group that was harmed during a particular time frame, in a particular location, in a particular way and facilitates a court's ability to ascertain its membership in some objective manner." *Labauve v. Olin Corp.*, 231 F.R.D. 632, 662 (S.D.Ala.2005).

■ Plaintiffs' class definition meets this criteria. The definition identifies a class consisting of a particular group—senior cabin attendants and senior stateroom stewards at NCL—during a particular time frame—from May 14, 2006 to June 14, 2009—who were covered by a specified collective bargaining agreement and who were discharged from their respective vessels and whose voyages started or ended in United States ports and harbors.

Defendant is correct that in order to identify the class members, the Court must determine which senior stateroom attendants worked during the class period on voyages that started or ended in U.S. ports or harbors. This, however, is ascertainable from Defendant's employment records.[9] The definition therefore allows the Court to determine membership in the class using the objective method of confirming membership through NCL's employment records.[10] *See Perez v. Metabolife International, Inc.*, 218 F.R.D. 262, 269 (S.D.Fla.2003) (noting with approval class definitions that allow courts to confirm class membership using employment records).

The remaining issues raised by Defendant do not belong in the analysis of the class definition (which concerns identification of the group represented in the lawsuit); they are more properly considered in the context of determining whether individual issues render class certification inappropriate. Thus, I consider them later as they arise.

8. Page number citations refer to the numbers given by the parties at the bottom of each page.

9. Defendant argued in its opposition that the time-consuming nature of this determination renders the class definition inadequate. [DE 172, p. 10]. This analysis, however, has been simplified considerably by the Court's order on summary judgment, which was issued after the motion for class certification was briefed. Applying the summary judgment ruling, the parties were able to jointly prepare a chart that sets forth for each Plaintiff, each voyage, the itinerary of the voyage, and the sign-off port. [DE 229].

10. In its opposition, Defendant asserted that eight of the proposed class plaintiffs fail to satisfy the foreign voyage requirement. [DE 172, p. 9]. This was based on an interpretation of the Seaman's Wage Act that was rejected by the Court when it resolved the summary judgment motions. [DE 222, p. 5]. The joint stipulation of voyages at issue includes voyages by the eight putative class representatives that Defendant had previously argued should be excluded. [DE 229–1]. Thus, this argument by Defendant has been resolved in Plaintiffs' favor.

## D. Rule 23(a)

The requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of both class Plaintiffs and class counsel. Fed.R.Civ.P. 23(a).[11]

### 1. Numerosity

■ The first requirement of Rule 23(a) is numerosity: whether "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). As a general proposition, over forty class members is adequate to satisfy the numerosity requirement. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986). To establish this element, Plaintiffs simply point to the fact that 503 individuals were under contract with Defendant as senior stateroom attendants during the class period. [DE 141, p. 18]. Defendant argues that this fact does not satisfy Plaintiffs' burden because Plaintiffs do "not provide [ ] the Court with a procedure, method, or formula that the Court can mechanically apply to approximate the number of people having the attributes demanded by the claims Plaintiffs chose to pled." [DE 172, p. 17].

■ "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to makes a supported factual finding, that the class actually certified meets the numerosity requirement" *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir.2009) (citation and quotation marks omitted).

■ The issue, then, is whether Plaintiffs have provided sufficient evidence that the number of senior stateroom attendants who worked during the class period on voyages starting or ending in U.S. ports and harbors (in other words, the voyages that survived Defendant's summary judgment motion), is large enough that joinder of all class members is impracticable. The parties agree that at least 64 voyages, on 11 ships, are the subject of Count II of the Amended Complaint, and there may be an additional 39 voyages at issue under Count IV. [DE 229, ¶ 1; DE 280, ¶ 3], Plaintiffs have presented evidence that these ships had hundreds of senior stateroom stewards under contract during the class period; and have filed affidavits stating that "every single senior stateroom steward" on the voyages the affiants worked on hired helpers. [DE 190–1, p. 4, ¶ 21 and p. 11 ¶ 20; DE 141–1, p. 4]. I find that Plaintiffs have provided sufficient evidence that the class members would be so numerous as to make joinder impracticable.

### 2. Commonality

To satisfy the commonality requirement, Plaintiffs must show that the class action involves issues that are susceptible to class-wide proof. *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 405 (M.D.Fla.2004). This is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268 (citation and quotation marks omitted). I believe Plaintiffs have met this burden.

To begin, there is no dispute that class members were all employed under a single Collective Bargaining Agreement between NCL (Bahamas) Ltd. and Norwegian Seafarers' Union. [DE 172, p. 3]. In the Amended Complaint, all class members assert that Defendant violated their rights under the same legal theory of liability pursuant to the Seaman's Wage Act and common law. Plaintiffs have also provided evidence that Defendant applied standard housekeeping procedures and policies in its hotel departments for all vessels, imposing on the senior stateroom attendants uniform responsibilities, job duties and time frames for completing assigned tasks. [DE 141, Exs. 9, 10, 11, 12, 15, 16].

■ Thus, an issue of fact common to all members of the class is what the Defendant's

---

11. Defendant raises a general challenge to the sufficiency of the evidence Plaintiffs have provided in support of their motion [DE 172, pp. 6–8], which I address in relation to particular aspects of the Rule 23 analysis.

policies and practices were for senior stateroom attendants' duties, and whether these policies were unreasonable.[12] A corresponding common issue of law is whether the facts alleged by Plaintiffs in the Amended Complaint establish Defendant's liability under the Seaman's Wage Act and common law. I find that Plaintiffs have satisfied the relatively light burden of proving issues susceptible to class-wide proof.

### 3. Typicality

The element of typicality focuses on "whether the class representative[s]' interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 677 (S.D.Fla.2007). In other words, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 564 F.3d at 1275. "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). Thus, "typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Ind., Inc.*, 273 F.3d 1341, 1346 (11th Cir.2001).

In their memoranda, neither party has addressed the typicality of any of the specific named plaintiffs. Moreover, of the thirty-one named Plaintiffs, only twenty have provided either affidavits or deposition testimony from which I might evaluate the typicality of their claims.[13] This information does demonstrate, however, that these twenty plaintiffs have claims that are typical of the claims of the class as a whole; they arise from the same alleged activity by Defendant and seek relief under the same legal theories. Notably, each of these Plaintiffs avers that he or she worked as a senior stateroom attendant during the class period and that, pursuant to Defendant's standard policies and procedures applicable to all senior stateroom attendants, he or she was given an excessive amount of work that required the hiring of helpers. Each of these Plaintiffs worked for Defendant pursuant to the CBA and brings claims for violations of the Seaman's Wage Act; the contract and statute applicable to the entire class.[14]

As for the remaining eleven named Plaintiffs, because the record contains no information regarding their individual claims, Plaintiffs have failed to establish that their claims are typical of those of the class.[15]

### 4. Adequacy

The fourth requirement in Rule 23(a), adequacy, addresses the ability of class counsel, as well as the named Plaintiffs, to adequately prosecute the action. This requirement is designed to ensure that there are no substantial conflicts of interest between the named representatives and members of the proposed class. *Colomar*, 242 F.R.D. at 678–79; *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985). Defendant challenges the adequacy of both counsel and the named Plaintiffs. [DE 172, pp. 20–22].

---

12. As discussed below, the related issue of whether a particular plaintiff was then, as the result of the workload, forced to hire helpers, presents individualized determinations.

13. These Plaintiffs are Abraham Wallace, Glenford Palmer, Noel Roy Peart, Granville White, Adrian Nash, Easton M. Harris, Hurbert Luke, Everol Barrant, Anthony Johnson, Erickson Harrison, Youcking Pryce, Percival Bentley, George Gregory, Worrell Brown, Terrence Countaim, Garfield William, Owen Wilson, John George James, Noel Everett, and Pauline Haughton. [*See* DE 190–1, 190–4, 190–5, 190–6, 190–7, 190–8, 190–9, 190–10, 190–11, 190–12, 141–19].

14. Defendants do not point to any individualized defenses applicable to the named Plaintiffs that would render their claims atypical. Rather, Defendant, grouping together commonality and typicality, lists a litany of issues that it contends, in an conclusory, fashion are "uncommon and atypical fundamental legal and factual issues." [DE 172, p. 19]. This is insufficient to defeat Plaintiffs' showing of typicality for the twenty named Plaintiffs who filed affidavits.

15. These named Plaintiffs are Delroy Smith, Erington Kerr, Cecil Harris, Noldon Thompson, Noel Mais, McLeod Gibson, Edward McNeil, Williams Lloyd, Dave Lewis, Roy McClean, and Oswald Johnson.

Defendant's challenge to the adequacy of counsel is easily dismissed. Defendant first objects to Plaintiffs' counsel's failure to provide evidence that they are adequate, such as resumes or firm biographies. [DE 172, pp. 20–21]. Although this information *is* helpful, Defendant does not cite authority that requires such filings, in order for the Court to find Plaintiffs' counsel adequate. Moreover, Plaintiffs provide this information in their reply. [DE 190–19].

Defendant's other challenge to counsel's adequacy, that "the attorneys representing Plaintiffs in this action—Carlos Llinas and Michael Winkleman—have been practicing for *eight months* and *three years*" and thus, have "neither the experience nor expertise to represent the class" [DE 172, p. 23], is disingenuous, as Defendant is well aware that more experienced attorneys from the same law firm also represent Plaintiffs in this action. The records demonstrates that senior partners from the Plaintiffs' law firm, a well-respected admiralty firm, attended some depositions and are otherwise involved in this action. [*See e.g.*, DE 173–16, p. 3; 173–22, p. 3; 173–28, p. 3; 190–19]. It is also worth noting that Plaintiffs' counsel has stated claims against Defendant that have survived summary judgment. Finally, this Court has had the opportunity to observe counsel's performance first-hand and is satisfied that they are adequate.

■ As for the adequacy of the named Plaintiffs, "attacks on class representative's knowledge of and involvement in a case are ... generally irrelevant to the adequacy inquiry." *County of Monroe, Florida v. Priceline.com, Inc.*, 265 F.R.D. 659, 669 (S.D.Fla. 2010). Defendant's challenge to the named Plaintiffs is different here, and has some merit. In particular, Defendant focuses on Plaintiffs' lack of resources and alleged unwillingness to serve as class representatives. [DE 172, pp. 21–22]. Clearly, the eleven putative class representatives that have provided no information about themselves have not carried their burden to show that they would adequately prosecute the claims of the class.

As for the remaining twenty putative class representatives, I am troubled by the record evidence that Plaintiffs are financially unable to attend mediation or trial in Miami. [DE 43–1]. In particular, earlier this year all 31 Plaintiffs filed affidavits in which they stated that they were financially unable to travel to the United States because they could not afford the costs of airfare, lodging and food. [*Id.*]. These financial limitations call into question Plaintiffs' ability to vigorously prosecute this action on behalf of the class.

Unfortunately, Plaintiffs completely failed to address this issue in their reply. [DE 190, pp. 24–5]. Were this the only outstanding class certification issue, I would recommend that Plaintiffs supplement the record to explain how they intend to adequately represent the class in this Court in Florida in light of their non-resident status and admitted financial difficulties. However, because I recommend finding that the proposed class fails to satisfy the requirements of Rule 23(b), supplemental briefing on the issue of adequacy is unnecessary.

### E. Rule 23(b)

In addition to meeting the requirements of Rule 23(a), in order to have a class certified, Plaintiffs must show that the proposed class meets the requirements of at least one category set forth in Rule 23(b). *Vega*, 564 F.3d at 1265. Here, Plaintiffs move to certify the class under Rule 23(b)(1) and (b)(3).[16]

#### 1. The proposed class does not satisfy the requirements of Rule 23(b)(1)

■ Section 23(b)(1)(A) allows for class certification if prosecuting separate actions "would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class...." Fed.R.Civ.P. 23(b)(1)(A). Courts have interpreted this provision as applying only to actions seeking declaratory or injunctive relief. *See Babi-*

16. Plaintiffs cite to both Rule 23(b)(1) and (b)(2) in their motion, but the substance of their argument relates to Rule 23(b)(1); the reference to (b)(2) appears to be an error. [DE 141, pp. 24–25].

*neau v. Federal Express Corp.*, 576 F.3d 1183, 1195 (11th Cir.2009) ("[b]ecause the risk that judicial action will create incompatible standards of conduct is low when a party seeks compensatory damages, only actions seeking declaratory or injunctive relief can be certified under Rule 23(b)(1)(A)."). The proposed class here is seeking only compensatory damages, thus, Rule 23(b)(1)(A) is inapplicable.

Section 23(b)(1)(B) allows for class certification if prosecuting separate actions "would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interest." Fed.R.Civ.P. 23(b)(1)(B). Plaintiffs' only argument in support of this basis for class certification is the following: "Because the legal claims of all Seafarers are effectively identical, there is no reason to let rulings in a case brought by an individual Plaintiff prejudice or preclude the rights of any other Seafarers who may not have yet filed suit." [DE 141, p. 25]. To the extent Plaintiffs contend that the requirements of Rule 23(b)(1)(B) are satisfied if early-filed suits may have a precedential effect on later-filed actions, the Eleventh Circuit has rejected this view of Rule 23(b)(1)(B). *In re Dennis Greenman Sec. Lit.*, 829 F.2d 1539, 1546 (11th Cir.1987).

Plaintiffs have failed to establish that their class should be certified under Rule 23(b)(1)(B).

### 2. The proposed class does not satisfy the requirements of Rule 23(b)(3)

The Court also finds that Plaintiffs cannot meet the requirements of certification under Rule 23(b)(3), which demands that: (1) "questions of law or fact common to class members predominant over any questions affecting only individual members" and (2) "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." F.R.C.P. 23(b)(3).

### a. Predominance

In order to establish predominance under Rule 23(b)(3), Plaintiffs must show that common issues of law or fact predominate over individualized issues. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 329 (S.D.Fla. 1996). While Courts are expected to resolve motions for class certification without attempting to resolve the merits of the lawsuit, "evidence pertaining to the requirements embodied in Rule 23 is often intertwined with the merits, making it impossible to meaningfully address the Rule 23 criteria without at least touching on the 'merits' of the litigation." *Cooper v. Southern Co.*, 390 F.3d 695, 712 (11th Cir.2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.* 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006). Thus, in considering whether Plaintiffs have sufficiently established that common issues of law or fact predominate over individualized issues, the Court must "examine the cause[s] of action asserted in the complaint on behalf of the putative class." *Allapattah Serv., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir.2003).

The Eleventh Circuit has stated this test for predominance:

Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3).

*Vega*, 564 F.3d at 1270. Plaintiffs argue that individual issues "are subsumed within the class claims" [DE 190, p. 21], such that the common issues predominate. I can not agree, as I believe that at least two individualized issues of liability, identified by Defendant, overwhelm the common issues.

Plaintiffs claim Defendant engaged in a fleet-wide practice of assigning unreasonable work duties on embarkation day, leaving Plaintiffs no choice but to hire and pay helpers, so that they could timely complete those duties. Plaintiffs assert that Defendant's practice violated the Seamen's Wage Act and the covenant of good faith and fair dealing because, by forcing them to hire helpers to complete their assigned duties, Defendant effectively denied Plaintiffs their full wages.

Defendants have presented evidence, however, that some class members did not hire helpers and that, of those who did, some hired helpers for reasons other than those asserted by Plaintiffs. [DE 172, pp. 11–12]. If a class member did not hire a helper, or hired one for reasons other than an inability to complete his or her assigned duties, then, as to that plaintiff Defendant did not violate the full wage provision of the Seamen's Wage Act, or breach the duty of good faith and fair dealing, as alleged by Plaintiffs.

■ From the evidence put forward by Defendant it is clear that even if Plaintiffs were to establish on a class-wide basis that Defendant assigned its senior stateroom stewards an amount of work that was generally considered unreasonable, significant individual issues of liability would remain. The court would have to determine, for each class member, whether that class member used a helper, and, if the class member hired a helper, the reason for doing so. *Cooper*, 390 F.3d at 722 ("a class action should not proceed under Rule 23(b)(3) when it appears that most, if not all, of the plaintiffs' claims will stand or fall, not on the question whether the defendant has a practice or policy ... but on the resolution of highly case-specific factual issues.") (citation and quotation marks omitted).

Plaintiffs' claims also present several individual damages issues, including how much, if anything, each class member paid his helper on each voyage and each class member's entitlement to claimed penalty wages. Generally, individualized damage issues will not preclude a finding of predominance. *Priceline.com, Inc.*, 265 F.R.D. at 670. However, when the individualized damages issues are considered alongside the individual liability issues, this further tips the scale against finding that common issues predominant.

Thus, I conclude that the individualized issues overwhelm the common ones, and that Plaintiffs have not met their burden to prove predominance.

## 2. Superiority

If the Court concludes that Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3), it need not reach the issue of superiority. I note, however, that I believe Plaintiffs have also failed to meet their burden in this regard.

When considering superiority the Court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." F.R.C.P. 23(b)(3). I believe the first two factors weigh in favor of finding the class action vehicle superior: first, because the members of the class are generally uneducated and unsophisticated about legal proceedings and have shown no interest in individually controlling their actions, and second because there is no other pending litigation concerning this controversy. The last two factors, however, raise significant superiority concerns.

■ In support of the desirability of this forum, Plaintiffs point out that Defendant is based in this forum and Plaintiffs are geographically dispersed. [DE 190, p. 29]. Plaintiffs never address however, how the court, consistent with the requirements of due process, should deal with the manageability issues inherent in trying to resolve the claims of a class of hundreds of geographically diverse and generally uneducated and impoverished plaintiffs. These issues include, as mentioned above, the financial inability of Plaintiffs to travel to here, and the difficulties in providing notice and communicating with the class members, many of whom are either employed on cruise ships around the world or living in relatively remote areas in other countries.

Plaintiffs' failure to address these very real manageability issues in any concrete way and propose a plan to manage this case as a class action, leads me to conclude that, on balance, Plaintiffs have failed to prove the superiority of resolving their claims through the class action mechanism. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1191–92 (9th Cir.2001) (finding that class ac-

tion is not superior where the potential plaintiffs are geographically diverse and each class member has to litigate numerous separate issues to establish his or her right to recover individually).

In sum, I conclude that Plaintiffs have not met their burden to prove that they have met the class action requirements of Rule 23(b), and as a result I conclude that this case should not be certified as a class action.

### III. Recommendation

Based on the foregoing, I RECOMMEND that:

The Court **DENY** Plaintiffs' Motion for Class Certification. [DE 141].

The parties may file written objections to this Report and Recommendation with the Honorable Adalberto Jordan within **fourteen days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745, 749–50 (11th Cir.1988).

### IV. Order

Based on the foregoing, I ORDER that:

1. Plaintiffs' Motion to File Under Seal the Motion for Class Certification [DE 140] is GRANTED IN PART as follows: the Clerk is directed to unseal the motion and attached exhibits, EXCEPT for Exhibits 11, 12 and 15, which SHALL REMAIN SEALED.

2. Plaintiffs' Motion for Leave to File Under Seal Certain Exhibits to the Reply [DE 196] is GRANTED IN PART as follows: **no later than November 24, 2010,** Plaintiffs shall re-file the exhibits to the reply, previously filed as sealed, EXCEPT Plaintiff shall remove from Exhibit Q the page Bates numbered NCL–WALLACE–18659.

3. Defendant's Motion to Strike the Reply [DE 199] is **DENIED.**

4. Plaintiffs' Motion for Leave to File Corrected Exhibits B & C to Plaintiffs' Reply in Support of Class Certification [DE 213] is **GRANTED.**

RESPECTFULLY RECOMMENDED and ORDERED in chambers at Miami, Florida, this 18th day of November, 2010.