[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 30, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14527

_____

D. C. Docket No. 03-00386-CV-B-NE

ODESSA DEE HALL, as personal
representative of the estate
of Agnes Patterson,

Plaintiff-Appellant,

versus

UNITED INSURANCE COMPANY OF AMERICA,
UNITED INSURANCE COMPANY OF AMERICA,
Employee Benefit or Welfare Plan on
behalf of Teledyne Brown Employees,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 30, 2004)**

Before BIRCH, MARCUS and BRUNETTI[*], Circuit Judges.

BIRCH, Circuit Judge:

The novel issue presented in this appeal involves the interplay between two Federal Rules of Evidence: 901(b)(2), which allows non-expert opinion testimony about the genuineness of handwriting evidence based on sufficient familiarity, and 701, which allows lay opinion testimony that is rationally based on personal perceptions. Plaintiff-appellant, Odessa Dee Hall ("Hall"), filed an affidavit stating that a signature on a document purporting to cancel an insurance policy with defendant-appellee, United Insurance Company of America ("United"), was not authentic. The district court struck the affidavit, citing precedent from our sister circuits, on the ground that, because Hall could not demonstrate sufficient familiarity with the handwriting of the alleged signatory as required under Rule 901(b)(2), her opinion testimony was not rationally based on her own perceptions as required under Rule 701. After striking Hall's affidavit, the district court granted summary judgment to United based on the court's assessment that no genuine issue of material fact remained.

This court has not yet addressed the foundation necessary for lay opinion testimony proffered under Rules 901(b)(2) and 701. We AFFIRM the district

---

[*]Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

court's assessment of the relationship between these two Rules. We also AFFIRM the district court's grant of summary judgment to United, as well as the district court's decision denying Hall's motion to file a second amended complaint.

## I. BACKGROUND

Bobby Patterson ("Bobby"), who had a life insurance contract with United, was disabled due to mental impairments in 1990, and was placed on disability leave by his employer. United waived the premiums so long as Bobby complied with periodic medical examination requirements.

In 1995, Bobby completed a "Waiver of Premium Questionnaire" that stated: "I really do not wish this insurance to continue. It doesn't help me at all." R1-12, Ex. A-4. United sent Bobby two letters requesting that he complete a waiver form if he wanted to terminate his life insurance policy.

A document dated 5 April 1996, and purportedly signed by Bobby, stated: "I, Bobby M. Patterson request that my waiver of premium for my group life insurance policy through my former employer . . . be discontinued effective immediately." Id. at Ex. A-6. In response to this waiver of benefits, United sent Bobby a letter dated 23 July 1996 informing him that his life insurance policy had been terminated as per his request.

3

Almost four years later, Bobby died. Bobby's mother, Agnes Patterson ("Agnes"), was designated as the beneficiary under the United life insurance policy. Agnes died approximately one and a half years after Bobby died and never made a claim for benefits under the policy.

About six months after Agnes's death, Hall, as personal representative of Agnes' estate, made a claim for benefits under the policy, alleging two theories: (1) the waiver was not valid because it was not Bobby's signature and (2) Bobby was not mentally competent to have signed any waiver.[2]

In support of her arguments, Hall submitted two affidavits. The first affidavit was executed by Hall herself and stated:

> Over the course of time that I knew Bobby Patterson, [more than thirty years,] I became familiar with his handwriting. I saw him write, received correspondence from him and helped him review documents which he executed in my presence. I have examined the purported signatures of Bobby Patterson, dated August 30, 1995 [Questionnaire] and April 5, 1996 [Waiver] and they do not appear to be his handwriting.

R1-21, Ex. A. The second affidavit was submitted by Rocco Petrella, a "licensed professional counselor," who reviewed medical reports and opined that Bobby was not mentally competent to have signed any documents. Id. at Ex. B. One of the documents reviewed by Petrella contained statements and conclusions reached by

_____

[2]Hall's complaint was originally filed in Alabama State Court but was removed by United to the Northern District of Alabama on the basis of diversity jurisdiction. R1-1.

Bobby's attending psychiatrist, who concluded that Bobby was competent. In his affidavit, Petrella offered no explanation for his assertions to the contrary.

The district court struck both affidavits. As for the counselor's affidavit, the district court determined that the counselor was not a medical expert and therefore his testimony was inadmissible under Federal Rule of Evidence 702.

As for Hall's affidavit, the district court struck all relevant portions because Hall had not demonstrated with sufficient reliability how she was familiar with Bobby's signature.

After striking both affidavits, the district court concluded that no genuine issues of material fact remained and granted summary judgment to United. The district court also denied Hall's motion to file a second amended complaint–with new claims related to those filed in the first amended complaint–on the ground that the second amended complaint would be "futile" because it contained "no potentially meritorious claims." R1-27 at 3.

## II. DISCUSSION

Hall appeals the district court's decisions striking both affidavits and granting summary judgment to United. In addition, on the ground that the district court's grant of summary judgment was inappropriate, Hall appeals the court's

denial of her motion to file a second amended complaint.[3] We address each argument in turn, beginning with the applicable standard of review.

A. The Affidavits

We review evidentiary rulings made by the district court for abuse of discretion and will reverse the district court's decision only in cases where substantial prejudice exists. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002). In this case, we cannot say that the district court's decision to strike either affidavit was an abuse of discretion.

1. Hall's Affidavit

Hall's affidavit stated that she was familiar with Bobby's handwriting and that the signature on the waiver did not appear to be his. The district court, under Rule 901(b)(2), struck Hall's affidavit because it provided no foundation detailing how Hall had become familiar with Bobby's handwriting. And because Hall could not demonstrate sufficient familiarity, the district court held that the affidavit did not satisfy Rule 701 because her opinion testimony "would not be rationally based

_____

[3]Hall also appeals the district court's denial of her motion to compel discovery before ruling on United's summary judgment motion. Because Hall made vague assertions, thereby failing to satisfy the requirements of Federal Rule of Civil Procedure 56(f), we find this argument without merit and affirm the judgment of the district court on this issue. See, e.g., Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525, 527 (11th Cir. 1983) (the party requesting discovery under Rule 56(f) must "specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact") (citation omitted).

on her own perceptions." R1-28 at 6. In reaching this conclusion, the district court relied on decisions by our sister circuits because this court has not ruled on the proper foundation required for testimony admitted under Rules 701 and 901(b)(2). We do so now, beginning with a general discussion of the two Rules and then considering persuasive authority from our sister circuits.

### a. Rules 701 and 901(b)(2)

Rule 701 governs lay witness opinion testimony generally and dictates that such testimony must meet three requirements, one of which is relevant here: the testimony must be "rationally based on the perception of the witness." Fed. R. Evid. 701(a). Rule 901(b)(2) is a more specific rule, governing lay witness opinion testimony as it relates to the identification of handwriting. This rule requires that "[n]on-expert opinion [testimony] as to the genuineness of handwriting [must be] based upon familiarity not acquired for purposes of the litigation." Fed. R. Evid. 901(b)(2) (emphasis added). Thus, testimony purporting to satisfy the specific requirements of Rule 901(b)(2) must also satisfy the general requirements in Rule 701. If either Rule is not satisfied, the testimony is inadmissible.

We have not previously had occasion to detail the necessary foundation a lay person must establish under Rules 901(b)(2) and 701 in order to testify concerning handwriting. United States v. Barker, 735 F.2d 1280 (11th Cir. 1984), is the only

7

published opinion by this court discussing these two Rules. In that case, we held that lay witness opinion testimony by two co-workers of the defendant-signatory, who was charged with stealing bank checks, was properly admitted under Rules 901(b)(2) and 701. Id. at 1283. We noted that "[b]oth witnesses testified they were familiar with the defendant's handwriting and stated that in their opinions it matched or was similar to the handwriting on the checks." Id. We did not, however, provide guidance detailing how a witness could demonstrate his or her familiarity with disputed handwriting. For direction, we consider the decisions of our sister circuits, as did the district court.

b. Persuasive Authority

In United States v. Binzel, relied upon by the district court, the Seventh Circuit concluded that "there must be a minimal factual bases from which knowledge of, and a familiarity with, another's handwriting might reasonably have been acquired, in the absence of which the opinion evidence may be properly excluded." 907 F.2d 746, 749 (7th Cir. 1990). In the affidavit at issue in that case, Binzel purported to testify that the signature of the guarantor on the guarantee agreement was forged. Binzel asserted "that he acquired his 'familiarity' with [the guarantor's] signature" by observing the guarantor execute documents and viewing documents that were purportedly executed by the guarantor. Id. The district court

8

struck the affidavit and the Seventh Circuit affirmed, noting that the proper

foundation for familiarity was not established:

> Binzel does not identify the nature of the "documents" to which he
> refers, or attempt to establish the authenticity or genuineness of those
> documents. Neither does he identify a relationship or course of
> business with [the guarantor] that would reasonably familiarize him
> with [the guarantor's] signature. His opinion as to the authenticity of
> [the guarantor's] signature is based on nothing more than conclusory,
> self-serving allegations.

Id.

More recently, the First Circuit addressed the interplay between Rules

901(b)(2) and 701, holding that both must be satisfied before lay witness opinion

testimony regarding handwriting will be admissible. United States v. Scott, 270

F.3d 30, 49 (1st Cir. 2001). In Scott, the defendant (Scott) was charged with, inter

alia, making and possessing a forged check. Id. at 33. Donahue, an IRS agent

involved in the investigation, purported to testify that certain documents were in

Scott's handwriting. Donahue had been investigating Scott for many years and,

during that time, had seen many examples of Scott's handwriting, including:

> three to five letters, five to ten court pleadings, signature cards to open
> three bank accounts in Scott's name, fifty or sixty checks and deposit
> slips for those accounts, five to ten money orders, applications to file
> tax returns electronically, two driver's licenses, a pilot's license, and
> five to ten forms Scott had signed as part of booking procedures at
> police stations, among others. Donahue also saw Scott sign a
> document in his presence: a fingerprint card at the marshal's office
> during an earlier investigation.

9

Id. at 48. The district court forbade Donahue's identification of Scott's handwriting, but the First Circuit reversed, holding that "there was enough familiarity on the part of the witness [Donahue] to admit the testimony," even though Donahue witnessed Scott actually sign his name only once. Id. at 50.

In this case, Hall's affidavit states that she became familiar with Bobby's handwriting over the course of thirty years. R1-21, Ex. A. Hall asserts that she "saw [Bobby] write, received correspondence from him and helped him review documents which he executed in my presence." Id. Unlike the details provided in Scott and similar to the bald allegations in Binzel, Hall's affidavit does not provide the proper foundation detailing how her familiarity with Bobby's handwriting was obtained. While witnessing the disputed signature is not required, see, e.g., United States v. Tipton, 964 F.2d 650, 655 (7th Cir. 1992), we conclude that the lay witness must provide more detailed information regarding any "correspondence," "documents," or the like, relied upon to establish familiarity. Such instruments must be identified with particularity. Moreover, the lay witness must provide detailed information regarding his or her relationship with the signatory—whether it be familial, professional, or otherwise personal. In this case, Hall has provided no detailed information regarding either the instruments relied upon to garner familiarity with Bobby's handwriting or her relationship with him. Accordingly,

10

we cannot say that the district court's decision to strike Hall's affidavit was an abuse of discretion.[4]

## 2.  Counselor's Affidavit

Hall submitted the affidavit of Rocco Petrella–a "licensed professional counselor"–as an expert in mental health diagnoses, for his opinion that Bobby was not competent to sign the United waiver on 5 April 1996.  R1-21, Ex. B.  The district court struck Petrella's affidavit on the ground that it failed the requirements of Rule 702 of the Federal Rules of Evidence.

As the district court noted, admission of expert testimony is governed by Rule 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must

---

[4]In addition to striking those portions of Hall's affidavit relating to Bobby's handwriting, the district court also struck the portions of her affidavit relating to her opinion as to Bobby's mental condition.  R1-28 at 7.  Because Hall was not qualified to testify as to Bobby's mental capacity, the district court's decision to strike those portions of Hall's affidavit was not an abuse of discretion and is affirmed.  The portions of Hall's affidavit relating to Bobby's behavior based on her personal knowledge were properly admitted.  Id.

be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir.1999). The Supreme Court, in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2798 (1993) and Khumo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999), has dictated that district courts act as gatekeepers and have "considerable leeway" when deciding to admit or exclude expert testimony. Accordingly, "our review of evidentiary rulings by trial courts on the admission of expert testimony is very limited." McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (citation omitted).

In this case, Petrella's "expert" opinion was based on his review of several documents related to Bobby's mental health, including statements made by Bobby's attending psychiatrist. While Bobby's medical doctor concluded that he was competent, Petrella came to the opposite conclusion, with no explanation offered in his affidavit for this contrary result. The district court concluded that Hall "[had] not demonstrated that the information Petrella reviewed contained sufficient facts or data upon which to base [his] opinion," R1-28 at 8, and that "Petrella [did] not cite to any scientific methodology or literature supporting his conclusions or approving of the method he employed to make those conclusions," id. at 9. Moreover, the district court stated that Hall "[had] not sufficiently demonstrated

12

that counselors with similar training are qualified to render an opinion as to an individual's mental capacity." Id. at 8. Based on our "limited" review of the district court's decision to strike Petrella's affidavit, we cannot say that the district court abused its discretion. Accordingly, the judgment of the district court is affirmed.

B. Summary Judgment

"We review the trial court's grant or denial of a motion for summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party." Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, because no material factual disputes remained, we affirm the district court's grant of summary judgment to United.

In this case, we have concluded that the district court properly struck both (1) the portions of Hall's affidavit relating to Bobby's mental capacity and the validity of his signature, and (2) Petrella's purported expert affidavit relating to Bobby's mental capacity. Because all of Hall's evidence challenging the validity of Bobby's waiver of insurance benefits has been excluded, no genuine issue of fact

13

remains as to whether the United policy was waived. The district court correctly concluded that "[w]ithout an existing policy of life insurance, United owed no duty to pay life insurance benefits to [Agnes]." R1-28 at 9. Thus, summary judgment was properly granted in favor of United.[5]

C. Motion to File Amended Complaint

We review the district court's decision to deny Hall's motion to amend her complaint for an abuse of discretion. Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1300 (11th Cir. 2003). In this case, the district court denied Hall's motion on the ground that granting it would be "futile" because her second amended complaint contained "no potentially meritorious claims." R1-27 at 3. We conclude this decision was not an abuse of discretion and affirm the district court's order denying Hall's motion to file a second amended complaint.

Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," Froman v. Davis, 371 U.S. 178, 182, 83

[5]We note that Rule 901(b)(3) provides, alternatively, that the trier of fact or an expert handwriting witness may determine the validity of a contested signature. Fed. R. Evid. 901(b)(3). In this case, however, Hall offered only her own affidavit challenging the validity of Bobby's signature on the United insurance waiver. She did not submit any of the "correspondence" she received from Bobby or any of the "documents" he allegedly executed in her presence as evidence of his proper signature. Moreover, Hall did not offer any expert testimony as to the validity of Bobby's signature on the waiver. While Hall asserts that the validity of Bobby's signature is a genuine issue of material fact that remains for jury consideration, this material fact is not disputed because all of Hall's evidence in support of her contention was properly struck. See Fed. R. Civ. P. 56(c). Thus, United is entitled to judgment as a matter of law and Rule 901(b)(3) does not apply in this case. See id.

S. Ct. 227, 230 (1962), leave to amend "should be freely given," Fed. R. Civ. P. 15(a).  Under Froman, however, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.  Froman, 371 U.S. at 182, 83 S. Ct. at 230.  "This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."  Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted).

In this case, the district court properly denied Hall's motion to file a second amended complaint because the three new claims asserted, like those in her first amended complaint, would have been subject to dismissal as a matter of law.  The first two new claims were predicated on the existence of a valid insurance contract between Bobby and United at the time of his death.  Because the district court properly granted summary judgment on this issue, denial of Hall's motion to add these two new claims was proper.  Hall's third new claim involved fraud allegedly committed against Bobby by both United and his former employer.  As the district court correctly noted, however, fraud claims do not survive Bobby's death.  See Miller v. Dobbs Mobile Bay, Inc., 661 So.2d 203, 205 (Ala. 1995).  Accordingly, the district court's denial of Hall's motion to file a second amended complaint as futile was not an abuse of discretion and is affirmed.

15

### III. CONCLUSION

In this appeal, Hall alleged that the district court erred by striking her affidavit and the affidavit offered by her expert, Rocco Petrella. She also alleged error in the district court's grant of summary judgment to United and the district court's judgment denying her motion to file a second amended complaint. We disagree with all of the arguments proffered by Hall and find no reversible error committed by the district court. Accordingly, the judgment of the district court is AFFIRMED.