[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 18, 2008
THOMAS K. KAHN
CLERK

-----------------------------------------

No. 06-13682
Non-Argument Calendar

-----------------------------------------

D.C. Docket No. 06-20460-CV-PAS

FERRELL LAW, P.A.,

Plaintiff-Appellant,

versus

CRESCENT MIAMI CENTER, LLC,
a Delaware limited liability company,

Defendant-Appellee.

----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------

**(January 18, 2008)**

Before EDMONDSON, Chief Judge, ANDERSON and BARKETT, Circuit
Judges.

PER CURIAM:

Plaintiff-Appellant Ferrell Law, P.A. appeals the dismissal of its complaint

against its landlord, Defendant-Appellee Crescent Miami Center, LLC. The

district court erred when it failed to grant Plaintiff leave to amend; we vacate and remand.

Plaintiff law firm leases space on the twenty-seventh, thirty-first and thirty-fourth floors in Defendant's Miami Center property. The lease term runs through October 2012. In September 2004, Plaintiff advised Crescent that its needs had changed and it no longer needed the twenty-seventh floor space. The rent associated with that space is approximately $75,000 per month. The complaint alleged that Plaintiff told Defendant's leasing agent, Eric Siegrist, that Plaintiff would cover any rental shortfall and new tenant build-out expense; Siegrist advised Plaintiff of interest by an existing tenant in taking the twenty-seventh floor. Because of Siegrist's representations, Plaintiff engaged no outside broker.

When no existing tenant had been secured as of December 2004, Plaintiff obtained proposals from two independent brokers to find a replacement tenant on Plaintiff's behalf. According to the complaint, Defendant, through Siegrist, induced Plaintiff to allow Defendant to locate a tenant for Plaintiff. Siegrist represented that it served Defendant's interests to allow an already-existing tenant to replace Plaintiff on the twenty-seventh floor; it served Plaintiff's interest to work through Siegrist because an independent broker would charge a commission. Plaintiff agreed to permit Defendant to negotiate for a new tenant. Plaintiff

understood that Plaintiff would be responsible to cover only any rental shortfall and new tenant build out expense.

Although Siegrist showed the premises to prospective tenants and represented that a deal was very likely, as of April 2005, nothing had materialized; Plaintiff continued to pay its rent for all of its Miami Center space as it was obligated to do under its lease.

In April 2005, with no deal in hand, Plaintiff proposed to pay Defendant $1 million over the course of the remaining lease term in exchange for being released from its twenty-seventh floor lease obligation. Defendant did not respond immediately to Plaintiff's proposal, but did indicate that another tenant -- Stanford Group Holdings ("Stanford") -- was interested in the premises. Plaintiff repeatedly asked Siegrist how much Plaintiff would be obligated to pay Defendant under a deal with Stanford, but Siegrist was unable to quantify the amount until a deal was finalized. In August 2005, Defendant proposed a 1 October 2005 termination at a "buyout" fee of $1.8 million to relieve Plaintiff of its lease obligation on the twenty-seventh floor. According to the complaint, this proposed amount included "fraudulent representations" about the rental shortfall, build-out expense and brokerage commission expense.

In December 2005, Defendant signed a lease agreement with Stanford that obligated Stanford to take over the twenty-seventh floor on the same terms as Stanford leased the twenty-sixth floor once Plaintiff's lease of the twenty-seventh floor was terminated. On learning of the Stanford agreement, Plaintiff attempted to surrender possession of the twenty-seventh floor while retaining its other leased premises in Miami Center. Defendant rejected Plaintiff's surrender of possession.

Plaintiff filed suit against Defendant (i) claiming fraud in the inducement: Defendant, through Siegrist, induced Plaintiff to refrain from hiring an independent broker by its false representations about amounts for which Plaintiff would be responsible once a replacement tenant was secured; and (ii) seeking a declaratory judgment that Plaintiff validly surrendered possession of the twenty-seventh floor and terminated the portion of its lease with the Defendant covering the twenty-seventh floor. The district court concluded that the absence of a written termination agreement -- as required by the statute of frauds and the express terms of the lease -- was fatal to Plaintiff's complaint: neither the alleged oral termination agreement nor oral representations concerning termination terms -- as a matter of law -- could modify Plaintiff's lease obligation. Defendant's Rule 12(b)(6) motion was granted with prejudice; all pending motions not otherwise ruled upon were denied as moot.

We see no error in the district court's determination that Plaintiff's fraudulent inducement claim -- as set out in the complaint -- failed to state a claim. The heart of Plaintiff's complaint is Defendant's failure to honor oral representations made about the terms that would apply to a termination of Plaintiff's rental obligation on the twenty-seventh floor. Plaintiff concedes that no written agreement memorialized a lease modification and concedes further -- as Plaintiff is compelled to do by the lease itself and the Florida statute of frauds, Fla.Stat. § 725.01 -- that no enforceable termination agreements exists. Instead, the complaint attempts to present a fraudulent inducement cause of action that escapes the writing requirement of the lease and the statute of frauds. Plaintiff argues that its claim rests not on a modification of the lease but instead on a brokerage agreement -- fraudulently induced by Defendant's agent's representations -- whereby Defendant agreed to market the twenty-seventh floor premises on Plaintiff's behalf. But Florida law shows little tolerance for attempts to transform claims otherwise not enforceable because of the statute of frauds into enforceable fraud claims:

> Florida law explicitly prohibits a plaintiff from reformulating an oral contract as a misrepresentation for the purpose of avoiding the Statute of Frauds. See Ostman v. Lawn, 305 So.2d 871 (Fla. 3d D.C.A. 1974). The way a plaintiff fashions a claim does not determine

5

the applicability of the Statute. Because the Statute "bars any claim which requires as its gravamen, proof of a promise or agreement" not reduced to writing, "[t]here is no distinction between an action *ex contractu* and an action *ex delicto* in this regard. Id., at 872. As the Ostman [Court] further held, "The Florida rule is that the statute of frauds may not be avoided by a suit for fraud based on oral representations." Id. at 873.

Eclipse Med., Inc. v. Am Hydro-Surgical Instruments, Inc., 262 F.Supp. 2d 1334, 1345 (S.D.Fla. 1999). As pleaded in the complaint, no cognizable claim was stated.

Plaintiff also claims reversible error in the district court's dismissal of the complaint without first granting Plaintiff leave to amend. Crescent filed a motion to dismiss; it filed no responsive pleading. Plaintiff included within its response to that motion a request for leave to file an amended complaint. Again during the hearing on Crescent's motion to dismiss, Plaintiff requested an opportunity to file an amended complaint. Early in the course of that hearing the district court made this representation:

> I will tell you that I am going to give you another shot at the Complaint because I think that you may have something there. But the way it has been pled, it is not clear and I think in this case it is going to be more helpful to everyone if it is crystal clear what you are seeking.

6

As the hearing progressed, the district court indicated that it entertained some doubt that Plaintiff could amend to state a claim. When the motion to dismiss was granted, it was granted with prejudice; no opportunity to amend was granted.

The Federal Rules of Civil Procedure allow a party to amend its pleadings "once as a matter of course at any time before a responsive pleading is served...." Fed.R.Civ.P. 15(a).[1] And "[f]or purposes of [Rule 15(a)], a motion to dismiss is not a responsive pleading." Williams v. Board of Regents of the Univ. Sys. Of Georgia, 477 F.3d 1282, 1291 (11th Cir. 2007). As a general rule, leave to amend may be denied properly under Rule 15(a) when such amendment would be futile, see Hall v. United Ins. Co. of America, 367 F.3d 1255, 1262 (11th Cir. 2004); but the general rule has no applicability when Rule 15(a) accords a plaintiff the right to file an amended complaint *as a matter of course:* "When the plaintiff has the right to file an amended complaint *as a matter of course*, ... the plain language of Rule 15(a) shows that the court lacks the discretion to reject the amended complaint based on its alleged futility." Williams, 441 F.3d at 1293 n.6 (emphasis in original).

---

[1] We quote Rule 15(a) as in effect when this suit was before the district court. Amendment of that Rule -- effective 1 December 2007 -- is stylistic only.

<u>Wagner v. Daewoo Heavy Industries America Corp</u>., 314 F.3d 541 (11th Cir. 2002), makes clear that a counseled Plaintiff can not complain that the district court failed to grant -- sua sponte -- leave to amend: "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." <u>Id</u>. at 543. A counseled plaintiff who sits idly by awaiting the district court's ruling on a Rule 12(b)(6) motion can not complain on appeal that opportunity to amend should be allowed when no leave to amend nor motion to amend as of right was made. In the instant case, Plaintiff never filed an amended complaint before the district court granted Crescent's motion to dismiss; but Plaintiff did request -- in papers filed in opposition to that motion and again on the hearing on that motion -- leave to amend. The better course for Plaintiff would have been to proceed *as a matter of course* under Rule 15(a) to file an amended complaint; no permission to amend was required. Nonetheless, because Plaintiff did seek leave to amend before a responsive pleading was filed and before the district court ruled on the motion to dismiss, we can not say Plaintiff sat idly by. The district court erred in depriving

Plaintiff of an opportunity to amend when Plaintiff plainly and repeatedly requested leave to amend.[2]

No error has been shown in the district court's judgment on Plaintiff's declaratory judgment claim; no actual controversy exists about Plaintiff's lease obligations.

We VACATE the district court's dismissal of Plaintiff's complaint and REMAND with instructions to grant Plaintiff leave to amend the complaint.

---

[2]Before the district court and in its appellate briefs, Plaintiff indicated additional facts and claims it would advance in an amended complaint. Our decision to vacate and remand expresses only the view that Plaintiff had a right to amend; we express no view on whether Plaintiff can cure the deficiencies of the complaint.