**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 2, 2021**

# In the Court of Appeals of Georgia

A21A0837. SPILLERS v. BRINSON et al.

MCFADDEN, Presiding Judge.

This is an an equitable interpleader action filed by the insurance company under OCGA §§ 9-11-22 and 23-3-90 to resolve competing claims for a death benefit. After Bonnie Brinson's death, the estate of Holley Herring (through its administrator, Beverly Spillers) and the estate of Mary Brinson (through its executors, Robert Earl Brinson and Edythe Gwen Murphy) made competing claims for that death benefit. The trial court denied the Herring estate's motion for summary judgment, finding that genuine issues of material fact existed regarding whether Bonnie Brinson had changed her insurance beneficiary from Mary Brinson to Holley Herring. In so ruling, the trial court considered lay opinion testimony that Bonnie Brinson's signature on a change-of-beneficiary form was not genuine.

On appeal, the Herring estate challenges both the trial court's determination that the lay opinion testimony regarding handwriting was admissible and the trial court's ultimate decision that the Herring estate was not entitled to summary judgment. Finding no error on either point, we affirm.

1. *Facts and procedural history.*

> Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c). Following a trial court's grant or denial of summary judgment, we conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.

*Edward N. Davis, P. C. v. Watson*, 346 Ga. App. 729 (814 SE2d 826) (2018).

So viewed, the record in this case shows that the insurance company issued a life insurance policy to Bonnie Brinson in 1992. In 1993, Bonnie Brinson changed the beneficiary of that policy to her mother, Mary Brinson.

In September 2000, the insurance company received a form changing the beneficiary of the policy from Mary Brinson to Bonnie Brinson's friend, Holley Herring. That form contained a signature purporting to be that of Bonnie Brinson. In an affidavit, however, Bonnie Brinson's sister, Edythe Gwen Murphy, testified that

2

she was familiar with Bonnie Brinson's handwriting and believed the signature on the form was not genuine.

On October 28, 2014, the insurance company received through its online portal a request to change the beneficiary of the policy to Holley Herring. The person making that request used Bonnie Brinson's credentials. Earlier that day, someone had reset Bonnie Brinson's password after unsuccessfully attempting to log into the portal. On that day, Bonnie Brinson was at her mother's house; she did not have access to her personal computer and did not access the insurance company's website from her mother's computer.

Bonnie Brinson died on July 24, 2017. At that time, the insurance company's records showed Holley Herring to be the beneficiary of the death benefit under the policy. In the following months, both Holley Herring and Mary Brinson also died. Their estates each made a claim to the insurance company for the death benefit under Bonnie Brinson's policy, leading the insurance company to file this action against both estates as interpleader defendants.

The Herring estate sought summary judgment, arguing that as a matter of law it was entitled to the death benefit under the policy. The Brinson estate responded by,

among other things, pointing to Murphy's affidavit testimony challenging the genuineness of Bonnie Brinson's signature on the 2000 change-of-beneficiary form.

The Herring estate argued that the trial court could not consider Murphy's affidavit because it lacked the foundation required for the admission of lay opinion testimony regarding handwriting. The trial court disagreed, concluding that the affidavit testimony was admissible and that the Brinson estate had pointed to genuine issues of material fact as to whether Bonnie Brinson had, in fact, changed her beneficiary to Holley Herring.

We granted the Herring estate's application for interlocutory review of the trial court's denial of its summary judgment motion.

2. *Admissibility of lay opinion testimony about the genuineness of the signature on the change-of-beneficiary form.*

The Herring estate argues that the trial court, in ruling on the motion for summary judgment, should not have considered Murphy's lay opinion on the genuineness of the signature on the change-of-beneficiary form. "Lay opinion lacking a proper foundation cannot be considered [by a trial court] when ruling upon a summary judgment motion." *Brown v. DeKalb County*, 333 Ga. App. 441, 444 (777 SE2d 23) (2015).

4

Under Georgia's Evidence Code, a lay witness may give "testimony in the form of opinions or inferences . . . which are: (1) Rationally based on the perception of the witness; (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact issue; and (3) Not based on scientific, technical, or other specialized knowledge within the scope of [OCGA §] 24-7-702." OCGA § 24-7-701 (a). And in connection with the authentication of evidence, our Evidence Code permits "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation[.]" OCGA § 24-9-901 (b) (2).

These provisions are materially identical to provisions of the Federal Rules of Evidence. See Fed. R. Evid. 701; Fed. R. Evid. 901. So, to the extent Georgia appellate courts have not yet decided the issue in question under the current version of our Evidence Code, we must look to federal appellate precedent, and particularly Eleventh Circuit precedent, to construe the Georgia statutes. See *State v. Almanza*, 304 Ga. 553, 558 (2) & n. 4 (820 SE2d 1) (2018). But the Georgia appellate courts have construed both provisions.

"Whether to allow lay opinion testimony under [OCGA § 24-7-701 (a)] is a matter for the trial court's discretion[.]" *Bullard v. State*, 307 Ga. 482, 491 (4) (837 SE2d 348) (2019). Under this standard, which applies to lay opinion testimony on

5

handwriting, we "will not interfere with [the trial court's] ruling absent an abuse of discretion." *Carr v. State*, 350 Ga. App. 461, 470 (3) (829 SE2d 641) (2019) (citation and punctuation omitted). In cases involving lay opinion testimony that did not involving handwriting, our Supreme Court has found the testimony admissible under OCGA § 24-7-701 (a) where the opinion was rationally based on inferences formed by the witness from matters about which the witness had first-hand knowledge. See *Thornton v. State*, 307 Ga. 121, 128 (3) (c) (834 SE2d 814) (2019); *Fleming v. State*, 306 Ga. 240, 251 (5) (d) (830 SE2d 129) (2019). We have applied a similar analysis to affirm the admission under OCGA § 24-7-701 (a) of nonexpert opinion testimony on handwriting, holding that the record reflected a witness (who was an expert in areas other than handwriting) "had the opportunity to form a reasoned opinion as to the discrepancies in the signatures she saw on various checks while reviewing the financial records in [the] case[.]" *Carr*, 350 Ga. App. at 471 (3).

Rulings concerning the use of lay opinion testimony to authenticate handwriting under OCGA § 24-9-901 (b) (2) are also a matter for the trial court's discretion. See *Jones v. State*, 311 Ga. 455, 462 (2) (a) n. 5 (858 SE2d 462) (2021). In a case involving the application of OCGA § 24-9-901 (b) (2), our Supreme Court held that diary entries had been properly authenticated where a witness "testified that

she was very familiar with her sister['s] handwriting and identified [the sister's] handwriting in the pertinent diary entries." *Jones*, 311 Ga. at 461 (2) (a) n. 5. See also *Ammons v. Clouds*, 295 Ga. 225, 227 (1) (758 SE2d 282) (2014) (to be admissible, lay opinion testimony regarding the authenticity of handwriting must establish that the "witness was familiar with [the other person's] signature so as to be able to testify that the signature on the will was hers").

Of course, the lay opinion testimony in this case is not being offered to authenticate a piece of evidence. It is being offered to *challenge* the authenticity of a document relied upon by the Herring estate — the change-of-beneficiary form. But it is not apparent from the plain language of OCGA § 24-9-901 that that Code Section governs the admissibility of evidence offered to challenge a document's authenticity. By its terms, the Code section concerns the use of evidence to show "that the matter in question is what its proponent claims," not the use of evidence to show the matter in question is *not* what another party claims. OCGA § 24-9-901 (a). Once a party seeking to admit evidence "make[s] out a prima facie case [under OCGA § 24-9-901] that the proffered evidence is what it purports to be[, then] the evidence is admitted and the ultimate question of authenticity is decided by the jury." *Irving v. State*, 351 Ga. App. 779, 783 (2) (c) (833 SE2d 162) (2019) (citation and punctuation omitted).

7

Nevertheless, the Herring estate points to an Eleventh Circuit decision, *Hall v. United Ins. Co. of America*, 367 F3d 1255 (11th Cir. 2004), that applied the federal version of OCGA § 24-9-901 to evidence offered not to establish a prima facie case for the authenticity of handwriting, but to challenge that authenticity. The court in *Hall* held that Fed. R. Evid. 901 (b) (2) established more specific requirements for the admission of testimony relating to the identification of handwriting, in addition to those requirements for lay opinion testimony set forth Fed. R. Evid. 701. *Hall*, 367 F3d at 1259 (II) (A) (1) (a). Construing the two statutory provisions together, the *Hall* court held that all lay opinion testimony regarding the genuineness of handwriting must be supported by a foundation that (1) "identifi[es] with particularity" the instruments from which the witness obtained familiarity with the signatory's handwriting, and (2) "provide[s] detailed information regarding his or her relationship with the signatory — whether it be familial, professional, or otherwise personal." *Hall*, 367 F3d at 1261 (II) (A) (1) (b). Finding that the lay opinion in question, which challenged the authenticity of a signature, did not meet those foundational requirements, the *Hall* court held that the lower court did not abuse its discretion in excluding the testimony. Id. at 1260-1261 (II) (A) (1) (b).

8

We are not convinced that the specific requirements announced in *Hall* are consistent with existing Georgia law, discussed above, interpreting OCGA § 24-7-701 and OCGA § 24-9-901. None of those Georgia decisions acknowledge more specific requirements (such as the requirement that documents be identified with particularity) than the requirements set forth in the plain language of the two Code sections. And, as stated above, the application of OCGA § 24-9-901 to exclude evidence offered to challenge, rather than establish, the authenticity of evidence is inconsistent with the plain language of OCGA § 24-9-901 (a). Indeed our Supreme Court has expressed doubt about whether the appellate courts have "the authority to promulgate [extra-statutory] exclusionary evidence rules at all" in light of Ga. Const. of 1983, Art. VI, Sec. I, Par. IX's provision that "[a]ll rules of evidence shall be as prescribed by law". *State v. Orr*, 305 Ga. 729, 736 (2) (827 SE2d 892) (2019) (expressing

But we need not decide whether *Hall* governs the admission of the evidence in this case, because even if it does, the trial court was authorized to find that the Murphy affidavit met the requirements set forth in *Hall*. Murphy pertinently stated in her affidavit:

9

[W]hile my sister Bonnie Brinson was alive, we were very close our entire lives. Bonnie and I were approximately one and [a] half years apart in age. We grew up in the same household and attended lower, middle, and high school together. We also lived together for two years in Macon, Georgia. We took care of our aging mother together. Bonnie was also my doctor.

Over the course of Bonnie's life, I would see Bonnie's signature regularly on prescriptions she wrote for me, letters and cards she sent me, letters and cards she sent our mother, and bills that were paid while we lived together.

. . . [F]rom our contact as close siblings and seeing her signature on a regular basis, I was familiar with her signature.

Based on my familiarity with her signature, I do not believe that the signature on the Change of Beneficiary form dated September 23, 2000 . . . is Bonnie Brinson's signature.

The contents of this affidavit were significantly more particular and detailed than the contents of the affidavit in *Hall*. See *Hall*, 367 F3d at 1258 (I), 1260-1261 (II) (A) (1) (b). The trial court did not abuse his discretion in finding that Murphy, in her affidavit, sufficiently identified and described her relationship with Bonnie Brinson

10

and the documents upon which she relied to provide the necessary familiarity to give a lay opinion about Bonnie Brinson's signature.

3. *Summary judgment.*

The Herring estate's summary judgment argument is premised on its evidentiary argument. Murphy's affidavit, which the trial court was permitted to consider (as discussed above), creates a genuine issue of material fact about whether Bonnie Brinson actually signed the September 2000 change-of-beneficiary form. And the evidence, viewed in the light most favorable to the Brinson estate as the nonmovant, creates a genuine issue of material fact about whether Bonnie Brinson was the person who requested a change of beneficiary through the insurance company's online portal in October 2014. Consequently, the trial court did not err in denying the Herring estate's motion for summary judgment.

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.

11