[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12934

Non-Argument Calendar

_____

NAVAL LOGISTICS, INC.,
d.b.a. Middle Point Marina,

                              Plaintiff-Counter Defendant-Appellee,

BISCAYNE TOWING & SALVAGE, INC.,

                              Intervenor-Appellee,

*versus*

M/V PETRUS,
in rem,
GREG PACK,
in persona,
CHARTERED YACHTS MIAMI LLC,

Defendants-Counter Claimants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20556-KMM

_____

Before JILL PRYOR, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

The luxury motor yacht M/V Petrus (the "vessel") sank twice: first in the Miami River and second at Middle Point Marina's ("MPM") shipyard. The vessel, along with its owners, Chartered Yachts Miami, LLC ("CYM") and CYM's principal, agent, and beneficial owner, Greg Pack (collectively, the "counterclaimants"), appeal the district court's dismissal with prejudice of their amended counterclaim against MPM. In the amended counterclaim, the counterclaimants asserted three claims: breach of contract, breach of the implied warranty of workmanlike performance,[1] and negligence.

_____

[1] The amended counterclaim asserted claims for breach of the implied warranty of workmanlike performance (Count I) and negligence (Count II). But the district court construed the breach-of-implied-warranty claim as if it were two distinct claims, one for breach of contract and one for breach of the

There are four issues on appeal. The counterclaimants, now the appellants, challenge the district court's dismissal of their (1) breach-of-contract claim, (2) breach-of-implied-warranty claim, and (3) negligence claim and the court's (4) denial of leave to amend on the ground that amendment would have been futile. After careful review, we vacate the district court's order on the fourth issue and remand for the district court to enter a reasoned order on the counterclaimants' request for leave to amend.

## I.    BACKGROUND[2]

MPM operated a shipyard in Miami, Florida. After the vessel sank at its shipyard, MPM filed an action against the vessel and Pack, bringing claims for breach of contract and a maritime lien for necessaries, storage, and salvage services. MPM alleged that, in December 2020, after the vessel had sunk in the Miami River (the "first sinking"), MPM picked up, towed, delivered, and stored the vessel

---

implied warranty of workmanlike performance. Because the parties do not challenge this construction on appeal, we construe the claim as the district court did.

[2] Given our standard of review, we recite the facts in the light most favorable to the counterclaimants. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (explaining that when reviewing the dismissal of a pleading on a motion to dismiss for failure to state a claim on which relief may be granted, we accept as true the well-pleaded facts in the pleading).

at its shipyard according to Pack's instructions. Two days later,[3] the vessel sank again (the "second sinking"). MPM then "salvaged, dewatered, floated, lifted, hauled out[,] and blocked the [vessel] on land in MPM's yard." Doc. 1 at 2.[4] MPM further alleged that, after the second sinking, it reached an agreement with Pack regarding storage, payment, and removal of the vessel. Despite the agreement, MPM alleged, Pack failed to remove the vessel by the agreed date or pay outstanding fees owed to MPM. As a result, MPM moved for issuance of an arrest warrant for the vessel and for appointment of a substitute custodian. The district court granted the motions and appointed MPM as substitute custodian of the vessel.[5]

CYM filed a "Verified Claim of Owner," thus appearing in the lawsuit as the owner of the vessel. Doc. 36. The counterclaimants then filed their answer to MPM's complaint along with a counterclaim against MPM. In the operative counterclaim (the amended counterclaim), the counterclaimants asserted two causes of action

---

[3] MPM's complaint alleged that the second sinking happened three days later. The amended counterclaim alleged that it happened two days later. For purposes of this appeal, we assume that the sinking happened two days later because we accept as true the well-pleaded facts in the amended counterclaim. *See Edwards*, 602 F.3d at 1291.

[4] "Doc." numbers refer to the district court's docket entries.

[5] Another entity, Biscayne Towing & Salvage, Inc. ("BTS"), intervened as a plaintiff to assert claims against Pack and the vessel for services it performed related to the first sinking. BTS is only nominally a part of this appeal because it was not a party to the amended counterclaim or MPM's motion to dismiss.

against MPM: breach of implied warranty of workmanlike performance (Count I) and, in the alternative, negligence (Count II).[6]

The counterclaimants alleged that, after the first sinking in November 2020, the vessel was recovered and placed in dry storage. MPM then offered its shipyard and storage services to the counterclaimants, knowing that the vessel previously had sunk and suffered significant hull damage. In December 2020, the vessel was removed from dry storage, placed in the water, and towed to MPM. It appears that the counterclaimants initially expected MPM to haul the vessel out of the water upon its arrival at MPM. *See* Doc. 57 at 4 ("Rather than haul out the [v]essel on arrival . . ."). But MPM told them that the vessel needed to be washed and cleaned before the haul-out, which would require it to be left in the water over the weekend. "The parties [orally] agreed that the [v]essel would be in MPM's care and custody over the weekend, then after MPM finished washing the [v]essel, it would be lifted out of the water and stored in MPM's dry storage to begin the repair process to fix the damage from the first sinking." *Id.* at 5. Two days later, before MPM hauled the vessel out of the water, it sank for the second time as it sat in the water unattended. The counterclaimants alleged that MPM delayed the haul-out and exposed the vessel to the foreseeable danger of a second sinking.

---

[6] The counterclaimants also alleged that CYM was the registered corporate owner of the vessel and that Pack did not enter into the original shipyard agreement with MPM individually, but rather on behalf of CYM.

In Count I of the amended complaint, the counterclaimants alleged that MPM breached the oral agreement between CYM and MPM "when it knowingly allowed the [v]essel to sit in the water unattended at their dock over the weekend . . . and furthermore allowed the [v]essel to sink at its facility." *Id.* at 6. They also alleged that MPM breached the implied warranty of workmanlike performance when it failed to "protect the [v]essel from damage while [the vessel] was docked at [MPM's] own facility. . ." and "exercise reasonable care, safety[,] and skill when it delayed the haul out of the damaged [v]essel [] and left it unattended over the weekend." *Id.* at 5–7.

In Count II, the counterclaimants alleged, in the alternative, that MPM was negligent because, as a full-service shipyard, it owed them a duty to exercise reasonable care in storing their vessel while it was docked at the shipyard. MPM breached its duty when it "allowed the [v]essel to sit in the water for days while [it] knew that the [v]essel had hull damage from the first sinking." *Id.* at 8. This breach of duty actually and proximately caused damages, the counterclaimants alleged, because the second sinking caused additional water damage to the vessel.

MPM moved to dismiss the amended counterclaim for failure to state a claim.[7] It argued that the counterclaimants failed to

---

[7] MPM and BTS also moved for interlocutory sale of the vessel pursuant to Supplemental Rule for Admiralty or Maritime Claims E(9). The district court

state a claim and made contradictory allegations as between their initial counterclaim and their amended counterclaim.

In their response to the motion to dismiss, the counterclaimants refuted MPM's arguments that they made contradictory allegations and failed to state a claim. In a footnote, they explained that the amended counterclaim should have said that MPM agreed to *watch* the vessel prior to haul-out, not *wash* the vessel. Doc. 61 at 4 n.1. They asked the district court to allow them either to substitute the words or to amend the pleadings for accuracy; they maintained that the error was based on a misunderstanding between the clients and their attorneys.

MPM replied, reiterating the arguments in its motion to dismiss. It added that the counterclaimants attempted to change the facts in their response, pointing, among other things, to the new assertion that MPM agreed "to provide dockage and 'watch' the [v]essel before hauling it out." Doc. 62 at 3.

The district court granted the motion to dismiss the amended counterclaim. The court agreed with MPM that the counterclaimants made contradictory allegations in their pleadings but declined to dismiss the amended counterclaim on that basis.

---

granted their motion in the same order in which it granted the motion to dismiss. The vessel was sold in September 2021. On appeal, the counterclaimants do not challenge the interlocutory sale. Thus, we deem abandoned any challenge to the sale. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

The court noted MPM's observation in its reply that the counter-claimants' response maintained that the agreement was to provide dockage and "watch" the vessel before hauling it out—but the court construed MPM's reference to "watch" as a "typographical error that was intended to be 'wash.'" Doc. 63 at 6 n.2. The district court otherwise failed to address the counterclaimants' request to amend their pleadings to substitute the word "watch" for "wash."

Turning to Count I, the district court held that the amended counterclaim failed to plead facts in support of its conclusory alle-gations that MPM breached the oral contract. The court noted that, although the counterclaimants alleged that MPM delayed the haul-out, they also alleged that the parties agreed the vessel would be in MPM's care and custody over the weekend and that it would be washed before it was hauled out of the water.

The district court further held that the counterclaimants failed to allege in Count I sufficient facts to support their claim that MPM breached the implied warranty of workmanlike perfor-mance. The court explained that the counterclaimants did not al-lege any facts showing that MPM failed to perform the allegedly contracted-for services competently, safely, or timely.

As to Count II, the district court dismissed the negligence claim on the ground that the alleged negligent conduct arose out of the parties' oral contract and thus was barred by the economic loss doctrine, which bars a tort action where the basis for liability arises from a contract.

The district court dismissed Counts I and II with prejudice, concluding that it could, *sua sponte* or on motion, deny leave to amend if amendment would be futile.

This is the counterclaimants' appeal.[8]

## II.    STANDARDS OF REVIEW

We review *de novo* the district court's dismissal of a pleading under Federal Rule of Civil Procedure 12(b)(6). *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). When we review a Rule 12(b)(6) dismissal, we review the pleading in the light most

---

[8] In MPM's brief on appeal, it argues that CYM lacks standing to bring claims on behalf of the vessel and is barred from recovering for damage to the vessel. MPM explains that CYM no longer has a property interest in the vessel since it was sold via the interlocutory sale. We are unpersuaded. "To have standing, a plaintiff must show (1) he has suffered an injury in fact . . . ; (2) the injury is fairly traceable to conduct of the [counter-]defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003). CYM, the registered corporate owner of the vessel, suffered an injury-in-fact when its vessel was damaged by sinking. The injury is fairly traceable to MPM, as the vessel was in its custody and control during the second sinking. The injury is redressable because, despite the interlocutory sale of the vessel, if CYM were to prevail on its amended counterclaim, MPM could be required to pay money damages to CYM because at time of sale the vessel was worth less due to the damage incurred in the second sinking. *See id.* And because only one plaintiff must have standing to seek each form of relief requested in the complaint, we decline to address MPM's arguments that Pack and the vessel lack standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("[W]hen there are multiple plaintiffs[,] [a]t least one plaintiff must have standing to seek each form of relief requested in the complaint.").

favorable to the party making the claims, and the pleading's well-pleaded facts are accepted as true. *Id.* Although a complaint or counterclaim need not contain detailed factual allegations, it must include enough facts to state "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

We review the denial of a motion to amend for an abuse of discretion, but we review the legal conclusion that an amendment would be futile *de novo. Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a pleading should be freely given so long as the amendment would not be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). An amendment is futile when, even with the proposed additions, the claim would be subject to dismissal under Rule 12(b)(6). *Id.* at 1263.

## III.    DISCUSSION

We first determine whether the counterclaimants failed to state a breach-of-contract claim. Second, we consider whether the counterclaimants stated a claim for breach of the implied warranty of workmanlike performance. Third, we examine whether the counterclaimants failed to state a claim for negligence. Fourth, we review whether the district court erred in dismissing the claims without affording leave to amend.

### A.    Breach-of-Contract Claim

The counterclaimants argue that their breach-of-contract pleadings were not contradictory. They explain that they

acquiesced to MPM's requirement to leave the vessel in the water over the weekend because MPM agreed to watch the vessel. So, they argue, MPM breached the oral contract by leaving the vessel unattended while it remained in the water over the weekend.

To establish a claim for breach of an oral maritime contract, a plaintiff must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005).

Here, accepting the well-pleaded facts as true and viewing them in the light most favorable to the counterclaimants, the district court correctly determined that the counterclaimants failed to state a claim for breach of contract. *See Edwards*, 602 F.3d at 1291. Although the counterclaimants alleged that MPM breached the parties' oral agreement when it allowed the vessel to sit in the water unattended over the weekend and sink, the amended complaint nowhere alleged that MPM agreed to watch or attend the vessel over the weekend. *See Iqbal*, 556 U.S. at 679. Thus, the counterclaimants failed to state a claim for breach of contract. *See Sweet Pea Marine, Ltd.*, 411 F.3d at 1249. Even though they argued in a footnote in their response to the motion to dismiss that they meant to allege that the agreement required MPM to watch the vessel, that is not what the amended counterclaim says.

## B.    Breach-of-Implied-Warranty Claim

The counterclaimants next argue that the district court erred in dismissing their breach-of-implied-warranty claim because they sufficiently pled that MPM failed to perform in a workmanlike manner the services that it agreed to perform under the oral contract.

The implied warranty of workmanlike performance obligates contractors to perform services "with reasonable care, skill, and safety." *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1315 (11th Cir. 2003).

Here, accepting the well-pleaded facts as true and viewing them in the light most favorable to the counterclaimants, the district court correctly determined that the counterclaimants failed to state a claim for breach of the implied warranty of workmanlike performance. *See Edwards*, 602 F.3d at 1291. First, there can be no breach of the implied warranty unless there was a contract in the first place, and as we have explained, here the counterclaimants failed to allege a contract that required MPM to watch or attend the vessel over the weekend. *See Vierling*, 339 F.3d at 1315 ("Every contract involving the rendering of services includes the implied promise to perform *those* services with reasonable care, skill, and safety." (emphasis added)). Second, as noted by the district court, the counterclaimants failed to allege facts sufficient to demonstrate how MPM performed the contracted-for services—docking, cleaning, washing, and hauling out—without reasonable care, skill, and safety, such that MPM breached the implied warranty of

workmanlike performance. *See Iqbal*, 556 U.S. at 679. Instead, their argument is essentially that because the vessel sank while under MPM's care, MPM must have failed to use reasonable care and skill to ensure its safety. That is not enough to state a plausible claim for breach of the implied warranty of workmanlike performance. *See Vierling*, 339 F.3d at 1315.[9]

## C.    Negligence Claim

The counter-claimants next argue that the district court improperly held that the existence of a contract barred their negligence claim under the economic loss doctrine. They rely primarily on the fact that in MPM's motion to dismiss it challenged the existence of a contract. They point out that they pled their negligence claim in the alternative, in the event the court ultimately concluded there was no contract.

To plead negligence under maritime law, a plaintiff must allege that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and

---

[9] Although the district court referred only to one of these reasons in concluding that the counterclaimants failed to state a claim for breach of the implied warranty of workmanlike performance, it nevertheless came to the correct conclusion. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

(4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

We assume without deciding that the economic loss doctrine does not bar the negligence claim because, accepting the well-pleaded facts as true and viewing them in the light most favorable to the counterclaimants, the counterclaimants nonetheless failed to state a claim for negligence. *See Edwards*, 602 F.3d at 1291. They failed to allege facts sufficient to show that MPM had a duty to protect the counterclaimants from the particular injury caused by the second sinking and that MPM did or failed to do something in breach of such a duty. *See Iqbal*, 556 U.S. at 679. Their conclusory allegations that MPM should have watched the vessel because MPM knew that the vessel previously had sunk and sustained damage to its hull are insufficient to establish that MPM should have known that the vessel was liable to sink again—after having been salvaged by BTS, put back in the water, and towed to MPM—and that MPM had a duty to do something to prevent it from sinking. Indeed, the amended complaint alleged that the counterclaimants agreed to MPM's plan to leave the vessel in the water to wash it before hauling it out, and they of course knew that the vessel had sunk previously and sustained hull damage. Thus, the counterclaimants failed to state a claim for negligence. *See Chaparro*, 693 F.3d at 1336.

## D.    Leave to Amend

The counterclaimants assert that the district court erred in denying them the opportunity to amend their counterclaim on the

ground that amendment would have been futile. We agree with them that remand is necessary.

Many times, and in many contexts, we have admonished district courts that their orders should contain sufficient explanation of their rulings to provide this Court with an opportunity to engage in meaningful appellate review. *See Clay v. Equifax, Inc.*, 762 F.2d 952, 957–58 (11th Cir. 1985) (collecting cases in which the Supreme Court and this Court's predecessor Court "urged the district court to state the reason for its decision and the underlying predicate"). In this case, the district court's bare assertion that amendment to the counterclaim would have been futile—without more—fails to provide us with an opportunity to conduct meaningful appellate review. For one thing, we are left unsure of whether the court recognized and considered the counterclaimants' request to substitute the word "watch" for "wash" in their amended counterclaim as a request to amend the pleading. The district court construed the reference to the word "watch" as a typographical error. For another, the district court left us without any explanation why any amendment necessarily would be subject to dismissal under Rule 12(b)(6) and therefore futile. *See Hall*, 367 F.3d at 1263. The court's order merely stated in a footnote that a court *may* deny leave to amend if amendment would be futile; it did not address why amendment would be futile here. Even though the district court may have good reason to be suspicious of the counterclaimants' desire to substitute "watch" for "wash" in describing the parties' oral contract, we

cannot say that this amendment necessarily would fail at the motion-to-dismiss stage.

## IV.    CONCLUSION

For the foregoing reasons, we vacate the district court's order dismissing *with prejudice* the amended counterclaim and remand the case to the district court to revisit the issue of leave to amend.

**VACATED AND REMANDED.**